DITTER, J.,
— This matter is before the court on an application to suppress evidence. It is contended that the results of a blood test, which was made to determine the amount of alcohol in defendant’s blood, should be excluded at trial, because advice and warnings required by the Constitution and statute were not given.
Defendant, Helen Thompson, was involved in an automobile accident on December 24, 1969.[1] Upon arriving at the scene, Officer Donald Slater, of the Whitpain police, noticed defendant was bleeding, crying and confused. An ambulance was called, and defendant was taken to the receiving ward of Montgomery Hospital.
*262 According to testimony taken at the suppression hearing on June 30, 1970, when Officer Slater reached the hospital he found defendant lying on a table. Standing a foot away, the officer detected a strong odor of alcohol on Mrs. Thompson’s breath and noticed that she was glassy-eyed. Not being sure whether she was under the influence of alcohol or drugs, Officer Slater had a hospital laboratory technician extract a sample of defendant’s blood. As a result of the analysis of that sample, defendant was arrested and subsequently indicted for operating a motor vehicle while under the influence of intoxicating liquor.
The Pennsylvania Vehicle Code of April 29, 1959, P. L. 58, as amended, July 31, 1968, sec. 624.1 (No. 237) 75 PS §624.1, provides:
“(a) Any person who operates a motor vehicle . . . in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, that the test is administered by qualified personnel ... at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor ... If any person is placed under arrest and charged with the operation of a motor vehicle . . . while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license ... to operate a motor vehicle . . . with or without a hearing. . . .
“(f) If for any reason a person is physically unable to supply enough breath to complete a chemical test a physician or a technician acting under his direction may withdraw blood for the purpose of determining *263 the alcoholic content therein. Consent is hereby given by such persons . . [2]
Defendant contends that she should have been advised of:
(1) her right to refuse to be tested;
(2) the fact that the test results could be used against her in court;
(3) her right to have counsel present during the tests; and
(4) her right to have a physician of her own choosing conduct a similar test.
We see no statutory or constitutional basis for requiring that any such advice be given.
In the last decade and a half, the United States Supreme Court has dismissed similar problems on at least two occasions. In Breithaupt v. Abram, 352 U. S. 432, 77 S. Ct. 408 (1957), petitioner was involved in an accident. While lying unconscious in the emergency room of a hospital, the smell of liquor was detected on his breath. A State Policeman requested the attending physician to extract a sample of blood, which on analysis contained about .17 percent alcohol. The court held the results of the test could establish innocence as well as guilt and that the intrusion was slight when compared to the benefits of decreasing mortal hazards on the road.
The court stated that the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right. In addition, the court cited with favor a Kansas statute similar to the present Pennsylvania law which states that a driver shall be deemed to have given his consent *264 to submit to a chemical test of his breath, blood or urine: Breithaupt v. Abram, supra, p. 435, n. 2.
In Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826 (1966), a sample of blood was withdrawn from the petitioner despite his refusal expressed upon advice of counsel. The court held evidence of the test results were properly received and cited Breithaupt with approval.
The Pennsylvania law in question really does no more than translate the rationale of the United States Supreme Court into statutory language. Appellant contends that because the statute provides for the legal consequences which are to follow a driver’s refusal to submit to the test:
(1) she had a legally protected right to withhold her consent to be tested;
(2) the statute imposed upon the police a duty to inform her of her right to withhold consent;
(3) the test results must be suppressed because the police failed to advise her that she could withhold consent.
This whole argument collapses, however, because there is no right to refuse the test.[3] Quite to the contrary one who drives an automobile is deemed to have agreed that such a test may be administered as long as the necessary procedures are carried out by qualified personnel. It would be ludicrous to have a statute impose consent upon every Pennsylvania driver and at the same time, give those drivers the means to thwart the legislative intent by the creation of a legally protected right of refusal.
The consent authorized by the statute is compatible with a sensible and civilized system which protects citizens not only from the hazards of the road due to *265 drunken driving, but also from the use of dubious lay testimony concerning an individuars degree of intoxication. In addition, the legislature was foresighted enough to realize that any driver may be so intoxicated as to be unable to give a consent which could later be proven to have been knowing and intelligent.
Section (h) of the act states that the refusal to submit to a test may be admitted into evidence as a factor in determining innocence or guilt. This does not imply that one must be afforded the opportunity to refuse the test. Obviously, the legislators perceived that drivers who have been drinking will offer an infinite variety of human conduct. Some will be meek and mild; others belligerent and obstreperous. There will be the unconscious and the seriously injured, and the statute even recognizes that some will be dead.[4]
The statute was not meant to create problems for the police but rather to design a scientific method of determining probable innocence or guilt. Yet, at the same time, the legislature did not want drivers subjected to inhuman treatment and slipshod methods of testing. The protections afforded by the statute are concerned with the manner in which the test is conducted and not with whether it can be conducted at all.
In the present case, petitioner never refused to submit to the test. She said nothing, and in no way indicated that she did not want the test performed. Her claim is, therefore, limited. Had she refused and then been physically forced to submit, we would have been faced with a totally different problem.
It is next contended that petitioner should have *266 been advised of her right to have counsel present during the test. We disagree. First of all, no right to counsel existed, for the test was a purely investigatory phase of the proceedings.[5] Secondly, counsel’s presence would have served no purpose. Schmerber v. California, supra, held that blood test evidence, although an incriminating product of compulsion, was neither petitioner’s testimony nor evidence relating to some communicaticative act or writing by petitioner, and, consequently, was not inadmissible as a violation of petitioner’s privilege against self-incrimination. Since Mrs. Thompson was not entitled to assert the privilege, no advice of counsel could have created a greater right.
Petitioner’s next contention is that she was not given the opportunity to select her own physician to administer the blood test as provided for in section (g) of the act:
“(g) The person tested shall be permitted to have a physician of his own choosing then and there administer a breath or blood chemical test in addition, and the results of such tests shall also be admissible in evidence.”
The crucial words are “in addition” and “also.” Petitioner did not have the privilege of having her own physician administer the test. She was permitted to have her own physician take an additional test, the results of which would also be admissible at trial. It is important to note that this is a privilege and cer *267 tainly not a right of which petitioner had to be informed. Even had a physician of her choice extracted more blood, the outcome of the initial test would not have been affected.
Lastly, it is contended that there was no search warrant obtained before the test was performed. The constitutional test with respect to searches and seizures revolves around the reasonableness of such action. Breithaupt and Schmerber hold that such testing is reasonable if performed properly, and the test in question was, in fact, performed under conditions virtually identical to that set forth in those cases.
In addition, to require a warrant before the blood or breath was sampled would render this statute nugatory. The body constantly expels the alcohol which drinking puts into the blood. If an officer needed to find a district justice, go to his home or office, prepare an affidavit and wait for the issuance of the warrant, the operator in many instances would be completely sober before the sample was taken.
And now, August 6, 1970, defendant, Helen Thompson’s, motion to suppress evidence is hereby dismissed.

 The accident occurred near the intersection of Butler Pike and Norristown Road, Whitpain Township, this county.

 The test in question was administered under the authority of section (f). Petitioner could not take the breath test because of lacerations around her mouth.

 Since the right is nonexistent, so also must be any corresponding duty to inform.

 Section (i) of the statute states that county coroners “shall take blood and/or urine samples from the bodies of drivers and pedestrians . . . who die within four (4) hours following an automobile accident. . . .”

 See Commonwealth v. Sperling, 32 Lehigh 385 (1967), wherein it was held that giving the operator of a motor vehicle suspected of driving while under the influence of intoxicating liquor certain well known physical tests, e.g., walking, turning and balance test, and speech test was an investigatory phase of the proceedings and the person examined was not entitled to counsel at such time.