## Smith License

*Joseph M. Hill,* for Commonwealth.

*Allen H. Krause,* for defendant.

GATES, P. J., February 10, 1971.—On August 22, 1970, Victor W. Smith, Jr., was stopped on the highway by a uniformed police officer of North Cornwall Township in Lebanon County, Pa. The officer had observed that Smith was driving erratically by weaving back and forth across the highway. Defendant refused to display his operator's license and owner's card. He told the officer that the car was registered in his name. However, the officer radioed the dispatcher and learned that it was not registered in the name of Victor W. Smith, Jr., but in the name of Ladd Motor Co.

During the course of this activity, the officer detected a strong smell of alcohol on defendant's breath, observed him stagger while walking, and he appeared to have difficulty speaking. The officer asked Smith if he would submit to a breathilizer test, and Smith refused. Being under the impression that defendant was under the influence of intoxicating liquor, the officer arrested him and told him he was going to charge him with operating under the influence. Smith was then taken before a district magistrate where he was charged. While at the district magistrate's office, Smith was again asked to submit to an intoximeter test, and he refused.

Subsequently, Smith was notified by the Director of the Bureau of Traffic Safety that his operator's privileges were suspended for refusal to submit to a chemical test in accordance with the provisions of section 624.1 of The Vehicle Code, 75 PS 624.1.

From this suspension order, Smith has appealed. We held a hearing on November 2, 1970. The notes of testimony taken at the hearing have been tran-

scribed, and we have the benefit of briefs from counsel.

Effective October 1, 1968, the Pennsylvania Legislature enacted the so-called "Implied Consent Law." The pertinent provision of this law as set forth in section 624.1 is as follows:

". . . If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons."

Defendant simply contends that there is no evidence in this record to show that Smith refused upon request to submit to a chemical test after being "charged" with the misdemeanor violation. With this contention, we disagree.

The record clearly shows that the police officer had probable cause to and did in fact arrest defendant on the highway. He informed him that he was taking him to the district magistrate for the purpose of charging him with operating under the influence. Again at the district magistrate's office, Smith was requested to take the intoximeter test, and he refused. Clearly, therefore, his refusal followed a lawful sight arrest. But the record does not disclose if this refusal occurred after the written complaint had been prepared. In our opinion, this is not critical. Smith was under a lawful arrest for the offense. He was told he was going to be charged with driving

under the influence of intoxicating beverages, and it was after that time that he was again requested to submit to the test, followed by his refusal. We believe that this is sufficient compliance with the statute so as to authorize the secretary to suspend Smith's operating privileges under section 624.1.

In our opinion, a person "arrested and charged" as employed in this section of The Vehicle Code contemplates a valid arrest based on reasonable cause and a charge of the specified misdemeanor offense. We believe that "charge" and "accuse" are to be used synonymously in interpreting this statute. Certainly, the legislature did not intend an absurd result: Commonwealth v. Bartley, 411 Pa. 286. A formal charge for a misdemeanor might well be interpreted to mean an indictment approved by the grand jury. On the other hand, a formal charge might mean the filing of a written complaint before a justice of the peace. But, if none were available for several hours, the whole purpose of the statute would be frustrated. Furthermore, it would be pointless and a waste of everyone's time to formally fill in a complaint, then ask the operator to submit to an intoximeter test, because, if the results are favorable to defendant, a lot of time would be wasted.

We feel there is an additional reason to interpret the term "charged" as an "accusation" rather than a formal, written charge. The delay between the time an operator is observed operating and the time the test is administered has caused our courts some concern because of the time factors involved in the ingestion of alcohol into the blood stream. See Commonwealth v. Hartman, 179 Pa. Superior Ct. 134; Commonwealth v. Kohute, 47 D. & C. 2d 195. Any interpretation of this section which would substantially contribute to a delay between the time of opera-

tion and the time of administration of the chemical test would have the direct effect of defeating the obvious purpose of the testing requirements. Thus we conclude that the expression "charged" as used in this statute is synonymous with "accused" and does not contemplate a formal written complaint as a condition precedent to the request-refusal basis for suspension.

If Smith's refusal to submit to the test had oc-curred in the field prior to the arrest and accusation, the defendant would have a valid argument. But this is not the case. He was asked on two occasions, and he refused twice. It was his refusal on the second occasion which constituted a transgression of the statute.

After a careful consideration of the record in this case, we will make the following

### ORDER

And now, to wit, February 10, 1971, the appeal is dismissed, and the secretary is directed to restore the suspension order.