Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Raymond G. Burke.

Argued June 10, 1977, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*John L. Heaton,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant.

*Thomas C. Branca,* with him *Stanford S. Hunn Associates,* for appellee.

OPINION BY JUDGE MENCER, July 27, 1977:

This appeal comes to us upon an agreed set of facts which are set forth in the opinion of the lower court:

At approximately 1:00 A.M. on the morning of May 14, 1975, Officer Wesley A. Hill of the Hatfield Township Police Department ob-

served a tan Chrysler being operated in an erratic manner. He followed at a distance and saw the suspect vehicle tailgating another vehicle. After the tan Chrysler had entered Chestnut Street from Cowpath Road, the operator suddenly stopped the vehicle and signaled a left turn. There was no street or driveway to the left. The operator then executed a right turn onto a one-way street and stopped. Officer Hill approached the vehicle, detected a strong bouquet of alcoholic beverage emanating from the operator and, after preliminary questioning of the [appellee], concluded that the operator was under the influence of intoxicating liquor. This conclusion was based upon the officer's observation of [appellee's] difficulty in disengaging the ignition buzzer system, the pronounced bouquet of alcoholic beverage, his erratic operation of the vehicle, and his combative demeanor.

[Appellee] was informed he was under arrest for drunk driving and requested to get into the police vehicle for transportation to the police station. Initially he refused, but complied after a third request and was transported to the station house. Upon his arrival, [appellee] became aggressive and threatened the lives of both Officer Hill and Sergeant Matthew Murphy. He was repeatedly requested to submit to a Mobat Sobermeter test by both officers, but steadfastly refused stating, 'What for? I'm drunk and I admit it. What more do you want?' [Appellee] was released a short time later and driven to his home in Hatfield by Sergeant Murphy.

A criminal complaint charging [appellee] with driving while under the influence of in-

toxicating liquor, a violation of §1037 of The Vehicle Code, was executed by Officer Hill later that morning. . . .

Upon notice of [appellee's] refusal to submit to the chemical breath test, the Secretary, pursuant to the Schedule of Suspensions set forth at 4 Pa. Bulletin 326 (1974), notified [appellee] on December 1, 1975 that his operating privileges were suspended for a period of six months effective January 5, 1976.

On December 19, 1975 [appellee] filed an Appeal therefrom . . . and was granted a hearing de novo and a supersedeas as of that date. Following a hearing convened January 26, 1976, [the Court of Common Pleas of Montgomery County] by order dated February 3, 1976, sustained [appellee's] appeal and rescinded the Secretary's Order of Suspension upon the finding that '[appellee] was not properly arrested and charged in accordance with §624.1(a) of The Vehicle Code.'[1] On March 2, 1976, the Secretary perfected an appeal from that determination. . . . (Footnote added.)

---

[1] Act of April 29, 1959, P.L. 58, *as amended, added* by the Act of July 28, 1961, P.L. 918, §1, 75 P.S. §624.1(a). Section 624.1(a) reads as follows:

(a) Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor. Qualified personnel means a physician or a police officer who has received training in the use of such equipment in a training program approved by the secretary. If any person is placed under arrest and charged

The issue in this appeal is the precise meaning of the term "charged" as used in Section 624.1(a) of The Vehicle Code, specifically, whether that section requires that a complaint be filed with a district justice before the request, refusal, and consequent suspension of the operator's license privilege can take place. The learned court below held that, where an operator is arrested, without a warrant, for driving while under the influence of intoxicating liquor, a license suspension under Section 624.1(a) is invalid unless the request for testing was made and refused after the arrest and the filing of a criminal complaint. Although the opinion accompanying the court's order, at the very least, should be described as thorough and forceful, we are of the view that the result reached below must be viewed as technical and overrestrictive.

Our analysis of the problem must commence with a recognition that, in construing legislation, a court should lend effectiveness to the purposes supporting the legislation. With this in mind, we must concur with the Court of Common Pleas of Lebanon County when it concluded that any interpretation of Section 624.1(a) which would substantially contribute to a delay between the time an operator is observed operating and the time the chemical test is administered would have the direct effect of defeating the obvious

with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons.

This section is repealed by the Act of June 17, 1976, P.L. 162, §7, effective July 1, 1977.

purpose of the testing requirements.[2] Thus, the expression "charged" as used in this section is synonymous with "accused" and does not contemplate a formal written complaint as a condition precedent to the request-refusal basis for suspension. *Smith License,* 51 Pa. D. & C. 2d 395, 13 Lebanon 165 (1971).

Our own Court, as long ago as *Commonwealth v. Gallagher,* 3 Pa. Commonwealth Ct. 371, 283 A.2d 508 (1971), speaking through Judge ROGERS, set the background for a consideration of the issue in the present appeal:

Section 624.1 was added to The Vehicle Code at the Legislative Session of 1961. In its original form, it provided that the operator might be given a breath test if he consented thereto. By amendment aproved December 22, 1969, P.L. 392, there were introduced the concept of assumed consent to the chemical breath test, the

---

[2] In *Commonwealth v. Thompson,* 52 Pa. D. & C. 2d 260, 267 (1970), Judge DITTER, writing for the Court of Common Pleas of Montgomery County, stated the following:

In addition, to require a warrant before the blood or breath was sampled would render this statute nugatory. The body constantly expels the alcohol which drinking puts into the blood. If an officer needed to find a district justice, go to his home or office, prepare an affidavit and wait for the issuance of the warrant, the operator in many instances would be completely sober before the sample was taken.

Judge DITTER, in the same opinion, made the further apt observation which is worthy of note relevant to the instant appeal:

The statute was not meant to create problems for the police but rather to design a scientific method of determining probable innocence or guilt. Yet, at the same time, the legislature did not want drivers subjected to inhuman treatment and slipshod methods of testing. The protections afforded by the statute are concerned with the manner in which the test is conducted and not with whether it can be conducted at all.

*Id.* at 265.

provision for suspension of operator's privileges for refusal and the admissibility in criminal proceedings of the fact of such refusal. As first enacted, Section 624.1 required consent to testing. By amendment, consent was supplied by law and refusal became admissible as evidence of guilt. As a deterrent to refusal, the recusant's driving privileges were made subject to suspension on this ground.

The automobile has bestowed great material, intellectual and social benefits. By the agency of the bad driver, it has also visited upon a substantial minority of persons disasters of Apocalyptic dimensions. At the forefront of the instruments of destruction has been the drunken driver. Section 624.1 and its precursors from other jurisdictions were intended to supply scientific, physiological proof of the presence or absence of the influence of intoxicants, as a substitute for or supplement to the observations of eyewitnesses, uncertain when made and usually required to be recalled long after the event. . . .

. . . It is helpful to be reminded that the Legislature's power over the public highways is plenary; and that the right to operate a vehicle on the highways is not a civil or property right but a privilege, the enjoyment of which is subject to such regulation and control as the State may see fit to impose. Commonwealth v. Funk, 323 Pa. 390, 186 A. 65 (1936); Commonwealth v. Harrison, 183 Pa. Superior Ct. 133, 130 A.2d 198 (1957).

*Id.* at 374-75, 283 A.2d at 509-10.

Other courts of common pleas of this state have dealt with this problem. We believe we cannot improve upon their reasoning. In *Commonwealth v.*

*Sundstrom,* 17 Chester 220, 222-23 (1969), Judge KURTZ wrote the following:

Statutory rules of construction are also helpful upon this point. The Statutory Construction Act, the Act of May 28, 1937, P.L. 1019, §51 (46 P.S. §551) directs that when the words of a statute are not explicit, the legislative intention may be ascertained by considering, inter alia: '(1) the occasion and necessity for the law; . . . (3) the mischief to be remedied; (4) the object to be attained; [and] . . . (6) the consequences of a particular interpretation.' Section 52 thereof (46 P.S. §552) indicates that in ascertaining the legislative intent it is presumed that the legislature did not intend an absurb result or one which is impossible of execution or unreasonable.

To now hold that a formal charge is required before a suspension can follow a refusal to submit to the test would totally defeat the purpose of this act. It was designed to obtain what the legislature believed was competent evidence as to whether a motorist was or was not under the influence of alcohol at the time he was arrested upon a charge of operating a vehicle while in that condition. Obviously, there is a necessity for the test to be administered before the effects of the alcohol consumed by such an operator have been dissipated through delay in testing. Where incidents such as the one here described occur late at night, the facilities for the filing of formal charges promptly are not always available. In many such cases the test could not be given until the time within which it could be effective would have passed. Under such conditions the occasion and necessity for the statute would

not be served; the mischief to be remedied would still not be remedied, and the consequences produced would be an enactment without substance, unless the test was given promptly. Such a result would be an absurd one indeed; one which would render the execution of the statute's provisions impossible.

A further expression of this reasoning was set forth by Judge LYON, writing for the Court of Common Pleas of Lawrence County in *Commonwealth v. Herjeczki*, 61 Pa. D. & C. 2d 147, 154-55 (1972), when he wrote as follows:

The statute requires in addition to a lawful arrest that the driver be 'charged.' The provision does not require a formal charge before a justice of the peace; a mere informal charge by the police officer is sufficient to make the statute operable. Merely informing the driver of the factual and legal basis of the offense is sufficient. Cf. Commonwealth v. Sundstrom, 17 Chester 220 (1969). It is almost common knowledge that the percentage of alcohol in the blood begins to diminish shortly after drinking stops and that a test taken two hours thereafter will not reflect the true state of intoxication when the vehicle was operated: State v. Findlay [259 Iowa 733, 743, 145 N.W. 2d 650 (1966)]. If the driver were not tested for intoxication until after he was formally charged before a justice of the peace the test result would be useless in a high percentage of the cases: Commonwealth v. Thompson, 52 D. & C. 2d 260 (1970). Indeed, such a delay for formal arraignment would defeat the very purpose of the legislation which was enacted to provide stronger law enforcement against drunken drivers by increasing effectiveness in investigatory procedures such as breath tests and other sci-

entific means used by police to determine the level of alcohol consumption: Morris Motor Vehicle Operator License Case, 218 Pa. Superior Ct. 347, 280 A.2d 658 (1971). The value of such objective scientific evidence of intoxication to supplement the fallible observations by humans of behavior seemingly symptomatic of intoxication cannot be disputed. In a day when excessive loss of life and property is caused by inebriated drivers, an imperative need exists for a fair, efficient and accurate system of detection, enforcement and, hence, prevention. The language of a statute must be read in a sense which harmonizes with the subject matter and its general purpose and object: Swartley v. Harris, 351 Pa. 116, 40 A.2d 409 (1944).

Our reading of Section 624.1(a) satisfies us that the use of the word "charged" in that section comprehends either a formal charge or the informal charge of an arresting officer. We further are of the view that support for such a conclusion is found in the reasoning utilized by our Supreme Court in deciding the case of *Glass v. Bureau of Traffic Safety,* 460 Pa. 362, 333 A.2d 768 (1975). In *Glass* it was held that the use of the word "arrest" in Section 624.1(a) is merely a reference to the physical act of arrest, *i.e.,* any act that indicates an intention to take a person into custody and that subjects him to the actual control and will of the person making the arrest, thus being a factual arrest as contrasted to a lawful arrest. Likewise, we think it is consistent to read the word "charged" in the same section to encompass the arresting officer's informing the operator of the charges that will soon be placed against him as contrasted to a formal charge resulting from the filing of a complaint before a district justice.[3]

---

[3] *Commonwealth v. Ebert,* 31 Pa. Commonwealth Ct. 82, 375 A.2d 837 (1977).

We must conclude that the obvious concern of the legislature when it enacted Section 624.1(a) was to define those factors upon which the Secretary of Transportation's power of revocation for refusal to submit to a breathalyzer test depended. Section 624.1 (a) confers the power of suspension where the enumerated facts have been determined to have occurred. *Glass v. Bureau of Traffic Safety, supra.* We find no indication from the language of this section that the legislature intended by the use of the word "charged" to limit the Secretary's power of suspension to only those cases where the refusal to take the breathalyzer test occurred after a formal charge had been lodged with the district justice. Any other conclusion would, in most instances, produce a result completely contrary to the obvious purpose that the legislature evidenced by enacting Section 624.1(a).

Here the appellee was placed under arrest, taken into custody, and transported to the police station and was informed that he was under arrest for drunk driving. His refusal of the repeated requests by the police officers to submit to a breathalyzer examination justified the Secretary's decision to suspend the driving privileges of the appellee.

Order reversed and suspension reinstated.

### Order

Now, this 27th day of July, 1977, the order of the Court of Common Pleas of Montgomery County sustaining the appeal of Raymond G. Burke from the suspension of his motor vehicle operating privileges by the Secretary of Transportation is hereby reversed, and the order of the Secretary of Transportation imposing a 6 months' suspension of the operating privileges of Raymond G. Burke is hereby reinstated, the suspension to commence 30 days from the date of this order.