333 A.2d 768
**John J. GLASS, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF TRAFFIC SAFETY,**

Supreme Court of Pennsylvania.

Argued Oct. 11, 1974.

Decided Feb. 20, 1975.

John G. Arch, Pittsburgh, for appellant.

John L. Heaton, Anthony J. Maiorana, Asst. Attys. Gen., Robert W. Cunliffe, Deputy Atty. Gen., Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

On July 26, 1972, appellant, John J. Glass, was involved in an accident while operating his automobile. A police officer subsequently arrived on the scene and, after a brief investigation, placed appellant under arrest for driving while under the influence of alcohol. The officer had not seen appellant operating the vehicle nor had he obtained a warrant for appellant's arrest.

Appellant was taken to the police station and asked to submit to a breathalyzer test. He was informed that failure to submit would result in a suspension of his license under section 624.1(a) of the Vehicle Code, Act of April 29, 1959, P.L. 58 as amended, 75 P.S. § 624.1(a). He nevertheless refused to take the test. The Secretary of Transportation (Secretary), upon report of such refusal, suspended appellant's motor vehicle operating privileges. Appellant then filed an appeal in the Court of Common Pleas of Allegheny County. By order dated July 13, 1973, that court upheld the action of the Secretary and dismissed the appeal. The Commonwealth Court affirmed and this Court granted allocatur.

Section 624.1(a) of the Vehicle Code provides:

"(a) Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor. Qualified personnel means a physician or a po-

lice officer who has received training in the use of such equipment in a training program approved by the secretary. If any person is placed under *arrest* and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons." (Emphasis added).

The Commonwealth admits that appellant had not been lawfully arrested at the time he was asked to submit to the breathalyzer test because the offense had not been committed in the officer's presence nor had the officer obtained an arrest warrant. See Act of April 29, 1959, P.L. 58, § 1204, 75 P.S. § 1204.[1]

The principal question presented in this appeal is whether the term "arrest" as used in section 624.1(a) requires a seizure of the person in accordance with section 1204. We defined the physical act of "arrest" in the case of *Commonwealth v. Bosurgi*, 411 Pa. 56, 68, 190 A. 2d 304, 311 (1963), as "any act that indicates an intention to take [a person] into custody and that subjects him to the actual control and will of the person making

[1]. This section has since been superseded by 19 P.S.App.R.Cr.P. 159. Section 1204 provides in pertinent part:
    "(a) Peace officers, when in uniform and displaying a badge or other sign of authority, may arrest, upon view, any person violating any of the provisions of this act, where the offense is designated a felony or a misdemeanor, or in cases causing or contributing to an accident resulting in injury or death to any person, and in all cases of arrest such peace officers shall forthwith make and file with the magistrate, before whom the arrested person is taken, an information setting forth in detail the offense, and at once furnish a copy thereof to the person arrested."

the arrest." See also, *Commonwealth v. Richards*, Pa., 327 A.2d 63 (Filed October 16, 1974). Appellant, however, contends that the term "arrest" as used in the instant section encompasses more than a factual determination that there has been a deprivation of a person's liberty, but also requires a legal determination that the restraint of personal freedom was exercised in accordance with law. Specifically here, he is charging that since the arrest did not comport with the requirement of the Act of April 29, 1959, *supra*, the Secretary had no power to suspend operating privileges under § 624.1(a).

Our reading of § 624.1(a) satisfies us that the use of the word "arrest" in that section is merely a reference to the physical act of arrest as defined in *Bosurgi*. Unquestionably, an arrest in that context occurred in the instant case.

■■■■ It is fundamental that a state has the power to revoke the motor vehicle operating privileges of its citizens upon just cause. *Commonwealth v. Funk*, 323 Pa. 390, 396–7, 186 A. 65 (1936). Further, while it is recognized that the suspension of licenses by state action may involve constitutional guarantees, *Bell v. Burson*, 402 U. S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), appellant does not challenge the reasonableness of a requirement that one suspected of operating a motor vehicle while under the influence of intoxicating liquor may be required to submit to a breathalyzer examination or suffer the loss of his or her operating privileges. The argument presently advanced is that the legislature in its use of the word "arrest" intended that power to be limited to those arrests that comported with the statutes and case law of this Commonwealth. Where the legislature intended to require a determination of the lawfulness of the arrest procedure, "they have on occasions expressed that intention by using the term 'lawful arrest' " e. g., 18 Pa.C.S. § 5104 (1973). Thus, if the legislature had wished to suggest a meaning other than the fact of arrest, as here sug-

gested, it is reasonable to assume that they would have used more explicit language to convey that intention.

Appellant is obviously correct in his assertion that courts in their effort to deter illegal arrests have extended the doctrine of exclusion to non-criminal proceedings where the fruits of that tainted arrest are sought to be introduced. *One 1958 Plymouth Sedan,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); *Leonardziak Liquor License Case,* 210 Pa.Super. 511, 233 A.2d 606 (1967). It is equally beyond question, that the legislature in its wisdom may determine that certain types of evidence should be excluded, 18 Pa.C.S. § 5701–04, added by act of December 6, 1972 (P.L. 1482, No. 334) §§ 1–4 (1973). These principles, unfortunately, are of little assistance to appellant's position. Here the obvious concern of the legislature was to define those factors upon which the Secretary's power of revocation for refusal to submit to a breathalyzer depended. Section 624.1(a) confers the power of suspension where the enumerated *facts* have been determined to have occurred. There is, in our judgment, no indication from the language of this subsection that the legislature also intended by the use of the word "arrest" to limit the Secretary's power of suspension depending upon the legality of the seizure of the person.

This conclusion is further strengthened by the proviso clause appearing in that section. The section itself limits the power to suspend for refusal to submit to the examination unless the test is administered by qualified personnel, with approved equipment and "at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor." Acceptance of appellant's theory would render the latter clause of the proviso redundant and violate the rule of statutory construction that requires that we read statutes so as to give effect to all of its provisions. Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a) (Special Pamphlet 1973).

Had the legislature intended to require a "lawful arrest" there would not have been a necessity to expressly require the police officer to act upon "reasonable grounds". The probable cause requirement for a "lawful arrest" would have satisfied this end.

Lastly, we do not believe this position is in any way inconsistent with the judicially determined policy to exclude the admission into evidence of the fruits of an illegal arrest. In this appeal, we are not called upon to pass upon the admissibility in a subsequent legal proceeding of the results of the examination if taken, where there has been an arrest which fails to meet the requirements of the laws of this Commonwealth. Nor are we persuaded that the objectives sought to be achieved by the doctrine of exclusion of the fruits of an illegal arrest would be necessarily furthered by superimposing this requirement upon the Secretary's power to suspend operating privileges for the refusal to submit to a breathalyzer examination. Balancing the dangers presented to the public by intoxicated motorists and the pressing need to remove them from our roads against the contribution to the effectiveness, this requested interpretation, will provide in deterring illegal arrests (particularly, where the irregularity did not violate constitutional mandates), it is clear that there is little justification for straining the clear language of this section in an attempt to ascertain a legislative intent to incorporate such a limitation.

Therefore, we conclude that where it has been ascertained that the operator has been placed under arrest, charged with the crime of operating a motor vehicle while under the influence of intoxicating liquor and has refused the request to submit to a breathalyzer examination, the Secretary is vested with the discretion to suspend the driving privileges of the motorist. In testing the exercise of that discretion, section 624.1 has provided that the germane considerations should be whether the test was administered by a qualified person, using ap-

proved equipment and that the arrest was made by a police officer having reasonable grounds to believe that the motorist was operating while under the influence of alcohol. There being no question raised as to any of these factors in the instant appeal, the exercise of discretion by the Secretary cannot be successfully challenged.

In a related argument, appellant asserts that the suspension of his operating privileges was accomplished without providing him with a "full and fair and meaningful hearing." Appellant asserts that at the departmental hearing he was not permitted to develop in detail the circumstances of the accident which had precipitated this arrest. However, his attack was not addressed to the competency of the examiner, the accuracy of the equipment used or the information supplying the basis upon which the officer formed the belief that he was operating while under the influence of liquor. For these reasons this objection is also without merit.

In our judgment the suspension of appellant's license under the statute was proper and the order of the Commonwealth Court is hereby affirmed.

EAGEN, J., filed a dissenting opinion in which O'BRIEN and MANDERINO, JJ., join.

EAGEN, Justice (dissenting).

The Commonwealth, while conceding that appellant had not been lawfully arrested at the time he was asked to submit to the breathalyzer test, nevertheless argues the term "arrest", as used in Section 624.1(a), encompasses merely a factual determination that there has been a deprivation of a person's liberty. A majority of this Court now accepts this position. I must disagree.

In ascertaining the intent of the Legislature, we must be guided by the rule of statutory construction which requires a reading of a statute that gives effect to all its

provisions. 1 Pa. S. § 1921(a) (Supp.1974); *Commonwealth v. Pope*, 455 Pa. 384, 389, 317 A.2d 887 (1974); *Sherwood v. Elgart*, 383 Pa. 110, 114, 117 A.2d 899 (1955). It must also be presumed the Legislature does not intend to violate the Constitution through its enactment. 1 Pa. S. § 1922(3) (Supp.1974); *Kurtz v. Erie*, 389 Pa. 557, 565, 133 A.2d 172 (1957). To accept the interpretation advanced by the Commonwealth and accepted by the majority would violate these principles.

Although the Legislature, in Section 624.1(a), did use the word "arrest" rather than "lawful arrest", it is apparent the latter was intended. In addition to providing the Secretary with the suspension power for failure to submit to the breathalyzer test, the Legislature also provided that such refusal could be admitted into evidence at the subsequent criminal proceeding against the accused. Act of April 29, 1959, P.L. 58, § 624.1(h), as amended, 75 P.S. § 624.1(h) (Supp.1974). As such evidence could be properly introduced only as the product of a lawful arrest, any reading which would allow less than a lawful arrest would clearly be unconstitutional and be violative of the aforementioned rule of statutory construction. Moreover, it would be inconsistent to allow the Secretary's suspension power to be triggered by an unlawful arrest, while requiring the presence of a lawful arrest before evidence of such refusal to submit to the test may be admitted at the criminal proceeding. As the Legislature cannot be considered to have intended an unreasonable or absurd result, 1 Pa. S. § 1922(1) (Supp. 1974); *Kurtz v. Erie*, supra, the Commonwealth's view should be rejected.

This reading does not, as the majority holds, render superfluous the requirement that the test be administered "at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor." This requirement only sets forth the procedural guidelines for

administration of the breathalyzer test and is unrelated to the Secretary's suspension power which takes effect when no test is given at all. Since the two provisions operate independently of each other, there is no inconsistency.

Today's decision requires only that the motorist be physically placed under arrest before he can have his motor vehicle privileges suspended for failure to submit to a breathalyzer test. Apparently, in the future, similar suspensions will be sustained without regard to the police conduct which preceded the arrest. By sanctioning the instant suspension, despite the presence of an unlawful arrest, the majority has effectively granted the police unfettered discretion to stop any vehicle. As we said in *Commonwealth v. Swanger*, 453 Pa. 107, 114, 307 A.2d 875, 879 (1973), "this discretion could be used arbitrarily, or as a guise for seeking evidence of other crimes, or on mere 'fishing expeditions.'" This impairment of the expectation of privacy which one has while driving in his automobile cannot be tolerated. It is imperative that there be an antecedent lawful arrest before a motorist can properly have his motor vehicle privileges suspended for failure to submit to a breathalyzer test.

I dissent.

O'BRIEN and MANDERINO, JJ., join in this dissenting opinion.