550 A.2d 1372

Wallace D. Menosky, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Submitted on briefs September 14, 1988, to President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, BARRY, COLINS, PALLADINO and MCGINLEY.

*H. Barry Bier,* for appellant.

*Christopher J. Clements,* Assistant Counsel, with him, *Harold H. Cramer,* Assistant Chief Counsel, and *John L. Heaton,* Chief Counsel, for appellee.

OPINION BY JUDGE DOYLE, December 5, 1988:

This is an appeal by Wallace D. Menosky (Licensee) from an order of the Court of Common Pleas of Allegheny County which affirmed the action of the Department of Transportation (DOT) in suspending Licensee's operating privileges for one year for refusal to submit to a breathalyzer test pursuant to Section 1547(b) of the Vehicle Code, 75 Pa. C. S. §1547(b).

The trial court found that Licensee's van was found at the scene of an accident on March 20, 1986 by police officers after they received two radio calls. After ascertaining (by a registration check) that Licensee owned the van that was up against a telephone pole, the officers went to his home to question him. Upon arrival at Licensee's home shortly thereafter, the officer who testified stated:

> [W]e were led into his house by his son. . . . He came into the living room in his bathrobe. He immediately started yelling at us. We tried to explain to him that we were investigating the accident, the van in the pole. We tried to explain to him that you are not supposed to leave the scene of an accident. And he said: it wasn't an accident, I just hit a pole.
>
> Mr. Menosky had a very strong odor of alcohol on him. His eyes were bloodshot. He was swaying back and forth.
>
> We told him that we were placing him under arrest for drunk driving, to take him downtown for the Breathylizer [sic]. He became very abusive, yelling and swearing at us and refused to go. We had handcuffed him.

And when we were leaving we again told him that he was under arrest for drunk driving, that we were taking him downtown for a Breathylizer [sic], at which time he said he wasn't taking any test. On the way to town he kept talking and saying that he wasn't in an accident, he just hit a pole. He paid some kids some money to pull his bumper out so that he could park his van up there.

Although asked to take the test at the Public Safety Building and warned that if he refused to do so it would result in the suspension of his operating privileges for one year, Licensee again refused to submit to the test. DOT, accordingly, suspended his license and an appeal to the trial court followed. Subsequent to a *de novo* hearing, the trial court upheld the DOT action and this appeal ensued.

On appeal here, Licensee presents two issues for our consideration. First, he contends that where the police officer did not actually observe him operate the vehicle her warrantless entry into his home was unconstitutional and, consequently, the evidence obtained from that entry (*i.e.*, the odor of Licensee's breath, his appearance and general demeanor) cannot be used to demonstrate that she had reasonable grounds to believe that Licensee was operating his van while intoxicated. Section 1547(a) of the Vehicle Code requires that the officer have reasonable grounds to believe that the Licensee was "driving, operating or in actual physical control of the movement of a motor vehicle: (1) while under the influence of alcohol. . . ." Alternatively, Licensee argues that even if the evidence be admissible, it is too temporally remote to demonstrate as a matter of law that the officer had reasonable grounds to believe that he was driving while intoxicated.

Licensee, in making his constitutional argument, relies upon two cases. The first, *Welsh v. Wisconsin,* 466 U.S. 740 (1984) ·concerned a Wisconsin statute which expressly provided that the absence of a lawful arrest is a substantive defense in a "refusal hearing." In Pennsylvania, however, a lawful arrest is not a prerequisite to a valid license suspension proceeding. *Glass v. Department of Transportation, Bureau of Traffic Safety,* 460 Pa. 362, 333 A.2d 768 (1975). In *Glass* our state Supreme Court observed that although the legislature had, in various instances by statute, used the term "lawful arrest" it had not done so in the predecessor to Section 1547 of the Vehicle Code.[1] This position was recently reaffirmed by our state Supreme Court in *Department of Transportation v. Wysocki,* 517 Pa. 175, 535 A.2d 77 (1987), wherein it was observed that "the legislature did not intend to engraft the requirements of the exclusionary rule onto [the predecessor to Section 1547]." *Id.* at 180, 535 A.2d at 79 (citing *Glass*). In refusing to extend Fourth Amendment protections to these cases, the *Wysocki* Court observed that "[t]he basis for employing the exclusionary rule in Fourth Amendment situations is to deter police officials from engaging in improper conduct for the purpose of obtaining *criminal* convictions." *Id.* at 180, 535 A.2d at 79 (emphasis added). It is well-settled that license suspension proceedings are administrative, not criminal in nature. *See, e.g., Department of Transportation, Bureau of Traffic Safety v. Grobes,* 45 Pa. Commonwealth Ct. 151, 405 A.2d 588 (1979). Thus, *Welsh* is not helpful to Licensee's case.

The second case upon which Licensee relies, *Commonwealth v. Monarch,* 510 Pa. 138, 507 A.2d 74

---

[1] The predecessor to Section 1547 was Section 624.1 of the Act of April 29, 1959, P.L. 58, *as amended,* formerly at 75 P.S. §624.1, *repealed by* Section 7 of the Act of June 17, 1976, P.L. 162.

(1986), concerns the question of admissibility of evidence in a *criminal* proceeding. Based upon the holdings in *Glass* and *Wysocki,* we believe that *Monarch* is inapplicable to this administrative proceeding.

Licensee's other argument is that because there was no evidence presented as to when the accident *occurred* (as opposed to when it was *reported)* the officer's grounds for her belief that Licensee was driving while intoxicated were unreasonable. First, there *is* testimony that from the time the police received a radio call advising them of the accident until they interviewed Licensee at his home approximately only fifteen minutes transpired. The trial court found that the officer had arrived at Licensee's home "shortly after *the collision."* (Emphasis added.) Admittedly, there is no evidence to support this finding because there is no evidence as to when the collision actually occurred, only as to when it was reported. We do not, however, view this fact as a dispositive one. As previously noted, in order to justify the suspension of operating privileges for refusal to submit to a breathalyzer test an arresting officer must have reasonable grounds to believe that a licensee was driving while intoxicated. Section 1547 of the Vehicle Code; *White v. Commonwealth,* 59 Pa. Commonwealth Ct. 156, 428 A.2d 1044 (1981). If a reasonable person in the position of the officer viewing the facts and circumstances as they appeared at trial could have concluded that the motorist had operated the vehicle while under the influence of alcohol, the requisite grounds are established. *White.*

Second, the individual who telephoned the police to report the accident stated that the man involved in the accident "appeared to be intoxicated." N.T. 4. The individual who made the call did not testify. Thus, this evidence, which was objected to on grounds of hearsay, was inadmissible to prove the truth or falsity of Li-

censee's intoxication. But the trial judge properly ruled that the statement, as non-hearsay, was admissible for purposes of proving the state of mind of the officer hearing the statement or explaining the reason for the conduct of the officer in response to hearing this statement. *See* L. Packel and A. Poulin, *Pennsylvania Evidence* §801.2 (1987). Thus, the prosecution may offer an out-of-court statement to explain why a police officer arrested a defendant, *id.,* citing, *inter alia, Commonwealth v. Underwood,* 347 Pa. 256, 500 A.2d 820 (1985). Accordingly, the caller's statements here would be admissible to establish the police officer's state of mind, *i.e.,* to establish that the police officer had reasonable grounds to believe Licensee was intoxicated.

Third, the officer observed the van, obtained the name of the person to whom it was registered, and interviewed an individual who had driven Licensee home. She then went to Licensee's house where she personally observed his condition and where he stated "it wasn't an accident, I just hit a pole." *Department of Transportation, Bureau of Driver Licensing v. Mulholland,* 107 Pa. Commonwealth Ct. 213, 527 A.2d 1123 (1987). At that point she placed him under arrest. We hold that these facts and circumstances were such that a reasonable person could have concluded that Licensee had been driving while intoxicated.[2]

Affirmed.

---

[2] Licensee also requests in the alternative a remand because consent to enter his home was not proven. First, this issue has been waived inasmuch as it does not appear in Licensee's brief as a question presented in accordance with Pa. R.A.P. 2116. Second, the officer testified, in any event, that Licensee's son "led" her into the house (N.T. 6). Third, we are not convinced that DOT has such a burden considering the Supreme Court's position in *Glass* and *Wysocki.*

ORDER

Now, December 5, 1988, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

Judge MACPHAIL did not participate in the decision in this case.