**C. Larry McKINLEY,**

**v.**

**COMMONWEALTH of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 2001.

Decided March 11, 2002.

Terrance M. Edwards, Harrisburg, for appellant.

John B. Mancke, Harrisburg, for appellee.

Before SMITH–RIBNER, Judge, PELLEGRINI, Judge, MIRARCHI, Jr., Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Pennsylvania Supreme Court has remanded this driver's license suspension appeal to this Court in *McKinley v. Department of Transportation, Bureau of Driver Licensing*, 564 Pa. 565, 769 A.2d 1153 (2001). The Department of Transportation, Bureau of Driver Licensing (DOT) questions on remand whether the arresting police officer continued to be a "police officer" in fact when he stopped and arrested C. Larry McKinley for driving under the influence of alcohol or a controlled substance, and, in any event, whether the legality of the arrest is immaterial in determining whether to sustain a license suspension for failure to submit to chemical testing under the Act commonly known as the Implied Consent Law, Section 1547 of the Vehicle Code, *as amended,* 75 Pa.C.S. § 1547.

## I

The Supreme Court remanded for this Court to clarify its jurisprudence concerning the consequence, in a license suspension proceeding, of a determination that the underlying police-citizen encounter occurred outside the officer's territorial jurisdiction. Specifically, the Court is to consider whether the extraterritorial nature of an encounter undermines the officer's status as a "police officer" under the Implied Consent Law with reference to *Kuzneski v. Commonwealth,* 98 Pa.Cmwlth. 595, 511 A.2d 951 (1986), and *Horton v. Department of Transportation, Bureau of Driver Licensing,* 694 A.2d 1 (Pa.Cmwlth.1997), and, if not, whether and to what extent the extraterritorial aspect impacts upon the statutory requirement that the officer possess reasonable grounds to believe that the licensee was driving under the influence. If the extraterritorial arrest is of no significance to the determination of reasonable grounds, then the Court is to determine whether the extraterritorial aspect warrants the remedy of suppression.

At the time of the events involved here the Harrisburg International Airport was

owned and operated by DOT.[1] Pursuant to Section 5903(a)(10) of the Aviation Code, 74 Pa.C.S. § 5903(a)(10), DOT was authorized to employ persons commissioned by the Governor as "police officers" in accordance with the Act of May 21, 1943, P.L. 469, *as amended,* 71 P.S. §§ 1791–1792, to provide police protection. On January 4, 1997, Corporal Laurence Miller of the Harrisburg International Airport Police, in his marked vehicle, saw a black Ford sport utility vehicle, which was initially parked on a ramp on airport property, abruptly cross the road and go up onto a concrete curb on the opposite side. Corporal Miller then followed the vehicle, which accelerated toward the speed limit of 55 miles per hour. The vehicle crossed the centerline once before leaving airport property. Corporal Miller continued to pursue the vehicle, which crossed the centerline twice more, and he then activated his emergency lights. The vehicle, operated by McKinley, traveled approximately two-tenths of a mile before coming to a stop roughly one-half mile from airport property.

Corporal Miller detected a strong odor of alcohol about McKinley. Corporal Miller arrested McKinley for driving under the influence of alcohol or a controlled substance after he failed field sobriety tests. Corporal Miller provided the required Implied Consent Law warnings to McKinley, including informing him that if he refused to submit to a chemical test for blood alcohol content his operator's license would be suspended for one year. McKinley refused to submit to a chemical test, and as a result DOT suspended his license for one year pursuant to 75 Pa.C.S. § 1547(b)(1). McKinley timely appealed. McKinley conceded before the trial court the facts relating to his arrest and his refusal; he raised only the claim that Corporal Miller lacked authority to invoke the Implied Consent Law or otherwise to enforce provisions of the Vehicle Code because he was not a "police officer" pursuant to 75 Pa.C.S. § 1547(a). That section provides in part that a person who drives, operates or is in actual physical control of the movement of a motor vehicle shall be deemed to have given consent to one or more chemical tests for the purpose of determining the alcoholic content of blood or the presence of a controlled substance "if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle" while under the influence of alcohol or a controlled substance or both. In the alternative, McKinley argued that Corporal Miller lost any authority to enforce the Vehicle Code once he left the airport grounds.

The trial court agreed that Corporal Miller lacked authority to arrest outside of airport territory under Section 1.1 of the Act of May 21, 1943, added by Section 1 of the Act of June 28, 1957, P.L. 435, 71 P.S. § 1791.1, and stated that the question then became whether sufficient grounds existed on the premises of the airport to warrant the officer to reasonably believe that McKinley was driving under the influence. The court stated that it was only after leaving the airport that reasonable grounds developed. Because Corporal Miller did not possess extraterritorial powers to make an arrest, the court granted the appeal. On DOT's appeal this Court reversed. The majority accepted DOT's argument that because the airport consisted of "State buildings and ... State grounds in Dauphin County" that Section 2416 of The Administrative Code of 1929,

---

1. In 1998 ownership, control and management responsibility for the Harrisburg International Airport was transferred to the Sus-quehanna Area Regional Airport Authority. *See McKinley,* 564 Pa. at 567 n. 1, 769 A.2d at 1154 n. 1.

Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 646, applied, which authorized Commonwealth Property Police to exercise the same powers as the police in the municipalities where State buildings are located.

The Supreme Court vacated this Court's order and remanded. The Supreme Court concluded first that Corporal Miller was a "police officer" within the meaning of Section 102 of the Vehicle Code, *as amended*, 75 Pa.C.S. § 102: "A natural person authorized by law to make arrests for violation of law." Pursuant to 71 P.S. § 1791.1, the heads of departments may employ persons to act as police officers at buildings or installations owned by the Commonwealth, and persons so commissioned "shall have all the powers and prerogatives conferred by the law upon constables of the Commonwealth." Although the Supreme Court had held in *Commonwealth v. Roose*, 551 Pa. 410, 710 A.2d 1129 (1998), that constables lack authority to stop or arrest for driving under the influence, the court noted that Section 74 Pa.C.S. § 5903(a)(10) authorized the head of DOT to provide police protection at airports and to "perform arrests and collect and retain all fines arising from infractions of the law" and that 71 P.S. § 1791.1 afforded commissioned employees "full power to make arrests for all violations of the law which they may witness upon any part of the premises of any such [State] building or installation." With these overlapping powers, the court concluded that Harrisburg International Airport Police had power to arrest for infractions of the Vehicle Code.

However, the Supreme Court determined that the jurisdiction conferred by the legislature on Harrisburg International Airport Police officers was constrained by that of the employer agency and according to the purposes of their employment.

Further, because the legislature had incorporated a concept of primary jurisdiction in the pertinent enactments, the court determined that any authorization of extraterritorial power necessarily should be express. Section 8953 of the Judicial Code, *as amended*, 42 Pa.C.S. § 8953, providing for statewide municipal police jurisdiction in certain circumstances, did not apply because Harrisburg International Airport Police are not municipal police, and the Supreme Court concluded that Corporal Miller's arrest of McKinley therefore was truly outside his territorial jurisdiction.

The Supreme Court noted that this Court appeared to have reached conflicting results as to the effect of an extraterritorial arrest. In *Kuzneski* the Court rejected a licensee's argument that because he was stopped outside the arresting officer's jurisdiction, the officer was not a "police officer" for purposes of the Vehicle Code. The Court held that the Vehicle Code required that the person requesting the test was in fact a police officer but did not allow for a specific inquiry into whether the officer was allowed by law to make the arrest at issue. In *Horton*, however, the Court determined that a campus police officer was not authorized to arrest a licensee for driving under the influence outside his territorial jurisdiction and that any refusal to submit to chemical testing was inconsequential.

II

With regard to whether Corporal Miller remained a "police officer" for purposes of the Implied Consent Law, DOT refers to *Department of Transportation, Bureau of Traffic Safety v. Evans*, 20 Pa.Cmwlth. 403, 342 A.2d 443 (1975). There a police officer from one township observed suspect operation of a vehicle while in an adjacent township, and he stopped the driver and ultimately arrested him for

driving under the influence of alcohol. The driver's license was suspended pursuant to the similar provisions of the predecessor to the Implied Consent Law.[2] On appeal the driver argued that the former statutory definition of a "police officer" as one of a group of peace officers vested with a power of arrest required that the officer possess such power where the arrest took place. The Court held that the arresting officer was an officer in fact, if not in law, and he was acting under full color of authority as a police officer. What was important was that factually the driver was placed under arrest, that he was charged with operating a motor vehicle under the influence of intoxicating liquor, that he was requested to take a breathalyzer test and that he refused. "Such being the case, there is no legal defense available to him." *Evans*, 342 A.2d at 445.

McKinley relies first upon *Snyder v. Commonwealth*, 163 Pa.Cmwlth. 178, 640 A.2d 490 (1994). There a Carnegie Mellon University police officer arrested a driver on campus for driving under the influence of alcohol, and the driver later refused chemical testing. The driver appealed in part on the basis of language in Section 1547(a) of the Vehicle Code that a driver shall be deemed to have given consent to one or more chemical tests "if a police officer has reasonable grounds" to believe that the person was operating under the influence of alcohol. The Court stated that a plain reading of that subsection evidenced a legislative intent to trigger provisions of the Implied Consent Law only when a person with legal authority to arrest has reasonable cause to believe that a motorist has been driving while intoxicated. The Court noted that DOT relied on statutory provisions that did not confer authority on campus police of a non-state-aided university to make arrests.

McKinley also quotes at length from *Horton*. In that case a University of Pittsburgh Police sergeant observed a car fail to stop at a red traffic light on a city street; he stopped the vehicle and arrested the driver for driving under the influence. This Court affirmed the sustaining of the driver's appeal from his suspension for refusing chemical testing. The Court noted that the statute affording police powers to campus police at state-related institutions specifically provided that they should exercise their powers and perform their duties only on the premises of the facilities which employed them. The Court held that Section 2416 of The Administrative Code of 1929 did not provide authority for the officer to arrest the driver for driving under the influence, and any refusal to submit to chemical testing was inconsequential. It cited *Commonwealth v. Savage*, 403 Pa.Super. 446, 589 A.2d 696 (1991), in which the court approved suppression of evidence in an appeal from a criminal conviction where a campus police officer observed illegal behavior off campus and pursued and arrested a driver away from campus.

The Court notes that in *Kuzneski* the Court relied upon *Evans* to refute a driver's contention that a police officer who made a request for chemical testing was not a "police officer" under the Vehicle Code because he was outside his territorial jurisdiction. The driver argued that the adoption of a new definition of "police officer" under Section 102 of the Vehicle Code, *as amended*, 75 Pa.C.S. § 102, as a "natural person authorized by law to make arrests for violations of law" did not permit the courts to draw distinctions be-

---

**2.** *See* former Section 624.1 of The Vehicle Code, Act of April 29, 1959, P.L. 58, *as amended, formerly* 75 P.S. § 624.1, repealed by Section 7 of the Act of June 17, 1976, P.L. 162.

tween officers in fact and officers at law. The Court noted that there was no question that the arresting officer was duly employed as a police officer by a municipality and was authorized by law to make arrests within that area. The only question was whether he was authorized by law to make the arrest, but that was a legal determination not relevant in a license suspension case. What was important was that the driver was *factually* placed under arrest; whether the officer was outside his jurisdictional limit was an issue properly raised in an action challenging the legality of the arrest. *See also Luzins v. Department of Transportation,* 128 Pa.Cmwlth. 601, 564 A.2d 289 (1989). Unlike the security officer in *Snyder* or the constable held not to possess authority to arrest in *Roose,* Corporal Miller was a police officer with powers of arrest. The present case is thus more akin to *Evans* and *Kuzneski* than to *Snyder* and *Roose,* and the Court sees no reason to depart from the settled analysis of these cases.

The underlying issue of whether an arrest for driving under the influence must be entirely proper in order to support a license suspension has been dealt with differently in different jurisdictions. In *People v. Krueger,* 208 Ill.App.3d 897, 153 Ill.Dec. 759, 567 N.E.2d 717 (1991), the court held that the requirement under the Illinois version of the Implied Consent Law that a driver be "arrested" meant a lawful and valid arrest, although the statute did not explicitly require such. The court cited *Department of Transportation*

*v. Wysocki,* 517 Pa. 175, 535 A.2d 77 (1987), for the contrary position. In *Wysocki* a driver was stopped at a roadblock set up in part to enforce the drunk driving law. He refused chemical testing, and his license was suspended pursuant to Section 1547 of the Vehicle Code. The Supreme Court declined to consider the driver's argument that the roadblock was unconstitutional because that question had no bearing on the resolution of the case. The court noted that it had held that the term "arrest" in the predecessor to Section 1547 referred to the physical act of arrest, *Glass v. Department of Transportation, Bureau of Traffic Safety,* 460 Pa. 362, 333 A.2d 768 (1975), and the Court saw no reason to reach a different result under Section 1547. *See also Menosky v. Commonwealth,* 121 Pa.Cmwlth. 464, 550 A.2d 1372 (1988) (holding that a lawful arrest is not a prerequisite to a valid driver's license suspension for failure to submit to chemical testing).

### III

 Pennsylvania law is clear that an arrest by a "police officer" need not be a perfectly valid and lawful arrest in order to support a valid request for chemical testing. One corollary of this proposition is that a police officer who has authority to arrest for Vehicle Code violations does not cease to be a "police officer" for purposes of the Implied Consent Law outside of his or her primary territorial jurisdiction.[3] The proposition that an arrest need not be perfectly valid and lawful to support a

---

**3.** DOT also argues that by analogy Section 3731(c) of the Vehicle Code, 75 Pa.C.S. § 3731(c), supports Corporal Miller's status as a "police officer" although he was away from airport property. Section 3731(c) provides that in addition to any other powers of arrest, a "police officer" is authorized to arrest without warrant any person who the officer has probable cause to believe has violated

the provisions of Section 3731, relating to driving under the influence of alcohol or a controlled substance, regardless of whether the offense was committed in the presence of the officer. This argument was not presented to the Supreme Court, and this Court need not address it in order to comply with the Supreme Court's remand order.

valid chemical test request relates to the second question the Supreme Court posed on remand, i.e., the extent to which the extraterritorial aspect of the arrest impacts upon the requirement that a police officer possess reasonable grounds to believe that a licensee was driving under the influence.

McKinley argues that the legislature could have provided for extraterritorial powers to the Harrisburg International Police but did not do so. He cites *Savage*, where the court stated that suppression of evidence of the extraterritorial arrest was necessary to prevent campus police from patrolling surrounding municipalities and usurping municipal police powers. McKinley cites *Commonwealth v. Johnson*, 743 A.2d 974 (Pa.Super.1999), where the Superior Court reversed a conviction based upon a park police officer's citation for summary offenses under the Vehicle Code, when the statute expressly empowered such officers to arrest only for felony or misdemeanor violations or for those causing or contributing to accidents involving injury or death. He also relies upon *Commonwealth v. Sadvari*, 561 Pa. 588, 752 A.2d 393 (2000) (overturning conviction where arrest of driver in Delaware violated Delaware's fresh pursuit statute), and *Commonwealth v. McCandless*, 538 Pa. 286, 648 A.2d 309 (1994) (suppressing evidence where municipal officer's pursuit of driver into neighboring municipality violated act relating to municipal police jurisdiction).

■ These cases, however, apply only to the question of the effect of an extraterritorial or extra-jurisdictional arrest in a criminal proceeding. The Court has stated: "It is well-settled that license suspension proceedings are administrative, not criminal in nature." *Menosky*, 550 A.2d at 1374. For purposes of enforcement of the Implied Consent Law, the fact that a police officer may develop reasonable grounds to believe that a driver is operating under the influence outside his or her territorial jurisdiction is not fatal. *Evans*, 342 A.2d at 445 ("It makes no difference that [the officer] had not been in hot pursuit of Evans across township lines. ..."); *Kuzneski*. In so holding the Court does not alter the limited primary territorial jurisdiction of many police officers; the Court simply recognizes that Implied Consent Law cases are different from criminal proceedings.

■ Finally, the Supreme Court has answered already the question of whether the extraterritorial aspect of the arrest warrants the remedy of suppression.

We specifically held in *Glass* that the legislature did not intend to engraft the requirements of the exclusionary rule onto the statute in question. ... Where the results of [a breathalyzer test] are being used as evidence in a criminal trial, it is properly excluded in that proceeding if it is found to be the fruit of an illegal arrest. The basis for employing the exclusionary rule in Fourth Amendment situations is to deter police officials from engaging in improper conduct for the purpose of obtaining criminal convictions. Where the driver refuses to take a breathalyzer test, that refusal violates a condition for the continued privilege of operating a motor vehicle and is properly considered as a basis for suspension of that privilege. The driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings.

*Wysocki*, 517 Pa. at 180, 535 A.2d at 79 (citations omitted). Accordingly, there is no requirement that proof of a refusal of chemical testing be suppressed in a license suspension proceeding where a police officer with probable cause to suspect a violation of Section 3731 of the Vehicle Code

made an arrest outside his or her territorial jurisdiction. For the reasons stated, the Court reverses the order of the trial court.

### ORDER

AND NOW, this 11th day of March, 2002, the order of the Court of Common Pleas of Dauphin County is reversed, and the driver's license suspension of C. Larry McKinley is reinstated.

Dissenting Opinion by Judge PELLEGRINI.

I respectfully dissent from the majority's holding that a Harrisburg International Airport (Airport) police officer employed by the Department of Transportation (DOT)[1] was authorized to make an extra-territorial arrest or request an individual to submit to chemical testing under suspicion of driving under the influence when the stop was made outside Airport property.

Our Supreme Court remanded this matter to us to clarify our jurisprudence concerning the consequence, in a license suspension proceeding, of a determination that the underlying police-citizen encounter occurred outside the officer's territorial jurisdiction, including how the encounter should be analyzed for the purposes of the Implied Consent Law, as well as the relevancy, if any, of the processes and protections available in criminal proceedings. *See McKinley v. Department of Transportation*, 564 Pa. 565, 769 A.2d 1153 (2001). Whether a license suspension based upon a licensee's refusal to submit to a breathalyzer test requested by a police officer who has stopped the licensee's vehicle outside the officer's territorial jurisdiction has been previously considered on two occasions by this court resulting in conflicting outcomes.

First, in *Kuzneski v. Commonwealth of Pennsylvania*, 98 Pa.Cmwlth. 595, 511 A.2d 951 (1986), *petition for allowance of appeal denied*, 514 Pa. 620, 521 A.2d 934 (1987), we held that although the police officer was outside his jurisdictional limitations, because he was, *in fact*, a police officer as defined in Section 102 of the Vehicle Code, *as amended*, 75 Pa.C.S. § 102, his arrest of the licensee and request for chemical testing properly supported the subsequent suspension of the licensee's driving privileges. More recently, though, in *Horton v. Department of Transportation*, 694 A.2d 1 (Pa.Cmwlth. 1997), we held that where a police officer was outside of his jurisdiction, he was not authorized to arrest the licensee for driving under the influence, and the licensee's refusal to submit to chemical testing could not be used to suspend his license. In doing so, we relied on *Commonwealth v. Savage*, 403 Pa.Super. 446, 589 A.2d 696 (1991), where the Superior Court held that suppression of evidence was appropriate where a police officer failed to comply with his statutorily mandated jurisdiction, stating, "[h]ad the officer complied with the above statutory mandate, appellee [Savage] would never have been stopped and arrested and was, therefore, truly prejudiced by the noncompliance." *Id.* at 700.

The majority holds that in determining whether a request for chemical testing was proper, what was important was that the driver was *factually* placed under arrest and that whether the officer was authorized by law to make the arrest was a legal determination not relevant in a license suspension case. Concluding that because Corporal Laurence Miller (Corporal Miller) was a police officer, *in fact*, with the

---

1. In 1998, ownership, control and management responsibility for the Harrisburg International Airport was transferred to the Susquehanna Area Regional Airport Authority.

powers of arrest, the majority adopts our holding in *Kuzneski*.

However, in resolving the conflict between *Horton* and *Kuzneski*, I am persuaded that *Horton* sets forth the better position. An extra-territorial arrest is not improper based on a defect in whether the officer had probable cause to make the arrest, but goes to the basic authority of a limited jurisdiction officer to make such an arrest where, as here, there was more than probable cause to do so. The General Assembly was quite specific in providing where these officers had jurisdiction—only on Airport property—and did not authorize them to make "fresh pursuit" arrests, again indicating that it did not want them to make any extra-territorial arrests. Because a limited jurisdiction police officer does not have the authority to arrest an individual off-premises and is not covered by "fresh pursuit," he is also without jurisdiction to request an individual to submit to chemical testing.

Moreover, as we held in *Horton*, where an officer is not authorized to arrest an individual for driving under the influence, any refusal to submit to chemical testing was inconsequential. Therefore, because Corporal Miller was not authorized to arrest McKinley or to request he submit to chemical testing, his refusal cannot support a license suspension.[2]

Accordingly, I respectfully dissent.

---

2. As to whether an extra-territorial aspect of an arrest warrants the remedy of suppression, the majority relies on our Supreme Court's decision in *Department of Transportation v. Wysocki*, 517 Pa. 175, 535 A.2d 77 (1987), wherein it held that the legality of the underlying arrest was not applicable in a license suspension proceeding because no proof of conviction was required. However, that case is distinguishable because in *Wysocki*, the Court addressed whether a roadblock conducted by state troopers was constitutional; the licensee did not challenge whether the police officers had the authority to arrest him for driving under the influence or request him to submit to chemical testing.