**Timothy KRUTH**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 16, 2004.

Decided Aug. 26, 2004.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellant.

Carl Marcus, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

Our Pennsylvania Supreme Court has remanded this controversy for reconsideration in light of the decision in *McKinley v. Department of Transportation, Bureau of Driver Licensing*, 576 Pa. 85, 838 A.2d 700 (2003)(*McKinley IV*).

In *McKinley*, Corporal Laurence Miller (Cpl.Miller) of the Harrisburg International Airport (HIA) Police observed a black Ford sport utility vehicle driven by C. Larry McKinley (McKinley) parked on a ramp located on airport property. After Cpl. Miller passed the vehicle it pulled away quickly and crossed onto a concrete

curb on the opposite side of the road. Cpl. Miller observed the vehicle accelerate toward the highway. The left wheels of McKinley's vehicle crossed the centerline at a curve that passed across railroad tracks which marked the territorial limit of his jurisdiction. After McKinley's vehicle went over the centerline two more times, Cpl. Miller activated his emergency lights. The actual vehicle stop occurred approximately two-tenths of a mile from the airport property. Cpl. Miller noticed a strong smell of alcohol emanating from McKinley. McKinley failed field sobriety tests and was arrested for driving under the influence of alcohol (DUI). He was given proper warnings but refused to submit to a chemical test of his blood. As a result, the Department of Transportation, Bureau of Driver Licensing (DOT) imposed a one-year suspension of his operating privilege pursuant to Section 1547(b)(1)(Implied Consent Law) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b)(1).[1]

McKinley appealed to the Court of Common Pleas of Dauphin County (common pleas court) and contended that Cpl. Miller was not a qualified police officer under the Implied Consent Law. Alternatively, McKinley argued Cpl. Miller lacked authority to enforce the Code off airport property. The common pleas court agreed and also found Cpl. Miller lacked sufficient grounds to reasonably believe that McKinley was driving under the influence until after Cpl. Miller left airport property. McKinley's appeal was sustained and DOT appealed to this Court which reversed. *McKinley v. Department of Transportation, Bureau of Driver Licensing*, 739 A.2d 1134 (Pa.Cmwlth.1999)(*McKinley I*). On further appeal, the Pennsylvania Supreme Court vacated the decision in *McKinley I* and remanded to this Court for clarification of the law in a license suspension proceeding where the police-citizen encounter occurred outside the officer's territorial jurisdiction.[2] Specifically, this Court considered

> [w]hether the extraterritorial nature of an encounter undermines the officer's status as a 'police officer' under the Implied Consent Law ... and, if not, whether and to what extent the extraterritorial aspect impacts upon the stat-

---

1. Section 1547 of the Code entitled, "Chemical testing to determine amount of alcohol or controlled substance," provides in pertinent part:

 **(a) General rule.**-Any person who drives, *operates or is in actual physical control of* the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests or breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle ... (1) in violation of section ... 3802 (relating to driving under the influence of alcohol or controlled substance)

 . . . . . .
 **(b) Suspension for refusal**-(1) If any person placed under arrest for a violation of Sec-

tion 3802 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of twelve months.

2. *McKinley v. Department of Transportation, Bureau of Driver Licensing*, 564 Pa. 565, 769 A.2d 1153 (2001)(*McKinley II*). This Court was also asked, in the context of its analysis, to resolve a conflict between divergent rationales in *Kuzneski v. Commonwealth*, 98 Pa. Cmwlth. 595, 511 A.2d 951 (1986), *petition for allowance of appeal denied*, 514 Pa. 620, 521 A.2d 934 (1987), and *Horton v. Department of Transportation, Bureau of Driver Licensing*, 694 A.2d 1 (Pa.Cmwlth.1997).

utory requirement that the officer possesses reasonable grounds to believe that the licensee was driving under the influence. If the extraterritorial arrest is of no significance to the determination of reasonable grounds, then the Court is to determine whether the extraterritorial aspect warrants the remedy of suppression.

*McKinley v. Department of Transportation, Bureau of Driver Licensing,* 793 A.2d 996, 997 (Pa.Cmwlth.2002)(*McKinley III* ).

On remand, this Court reversed the common pleas court and reinstated DOT's suspension of McKinley's license. *McKinley III,* 793 A.2d at 1003. This Court concluded that the location of the encounter between Cpl. Miller and McKinley, although beyond Cpl. Miller's territorial jurisdiction, did not impact the legal effect of McKinley's refusal under the Implied Consent Law. *Id.* at 1002. In so holding, this Court found that to be a "police officer" under the Code means one must be an "officer in fact," or an official with the power to arrest, to sustain a refusal-based suspension. *McKinley III,* 793 A.2d at 1001; *See Kuzneski.* McKinley appealed and the Supreme Court again reversed, holding that, "the Legislature has circumscribed [limited jurisdiction police officers'] authority, we hold that they lack the ability to act as police officers in implementation of the Implied Consent Law outside territorial boundaries, in the absence of an express, legislative grant of extraterritorial authority." *McKinley IV,* 576 Pa. at 95, 838 A.2d at 706.

In the controversy sub judice, by official notice dated December 5, 2001, DOT informed Timothy R. Kruth (Kruth) that his operating privilege was suspended for one year, effective January 9, 2002, as a result of his refusal to submit to chemical testing on November 11, 2001. Kruth appealed to the Court of Common Pleas of Allegheny County (trial court) pursuant to Section 1550(a) of the Code, 75 Pa.C.S. § 1550(a).

At a *de novo* hearing, Sergeant James Long (Sgt.Long) of the Township of Shaler (Shaler) Police Department testified that on November 11, 2001, he was in a marked police car stopped at a red light on East Pennview Street in Shaler at the intersection with Route 8. There, he observed Kruth make a left turn from Route 8 on to Pennview. When Kruth made the turn, ". . . he was half into my lane and steered away from my car. When he passed my police unit, I looked at him and he had a blank stare, just looking straight ahead. Didn't even observe me sitting there." Notes of Testimony, May 23, 2002, (N.T.) at 4; Reproduced Record (R.R.) at 14a. Sgt. Long turned his auto about and followed Kruth. At the intersection of East Pennview and Alma Street, he observed Kruth turn left onto Kenneth Drive where he proceeded in the opposite lane for about 150 yards. Kruth continued on Kenneth to the intersection with Mount Royal Boulevard where he turned left and headed south toward the Borough of Etna (Etna). At this point, Sgt. Long was briefly delayed in traffic.

Shortly thereafter, he found Kruth stopped off the roadway on a gravel parking area in Etna. Sgt. Long exited his vehicle as did Kruth. Sgt. Long asked Kruth to produce his license, owner's card, and registration. Sgt. Long noticed that Kruth's eyes were bloodshot and he smelled a moderate odor of alcohol. N.T. at 4–5; R.R. at 14a–15a. At this time, an Etna police officer arrived. Kruth failed field sobriety tests and Sgt. Long arrested Kruth in Etna for operating a motor vehicle under the influence of alcohol and transported him to the Shaler Police Station. Sgt. Long read PennDot Form DL–26, which contained the Implied Consent Law and O'Connell warnings to Kruth.

Kruth refused to sign the form and refused to submit to a chemical test. N.T. at 5–6; R.R. at 15a–16a. On cross-examination, Sgt. Long reported that Kruth was cited for driving a vehicle on the wrong side of the roadway and for driving under the influence. N.T. at 7; R.R. at 17a.

 Before the trial court, Kruth argued he could not be penalized for his refusal to submit to chemical testing based on an invalid arrest because Sgt. Long arrested him in Etna, outside his jurisdiction.[3]

> The trial court sustained Kruth's appeal: It is undisputed that the Officer [Sgt. Long] observed Defendant [Kruth] commit a summary offense in Shaler Township and arrested him in the Borough of Shaler [sic].[4] Consequently, Defendant [Kruth] contended that his arrest was invalid because [Sgt.] Long was outside his territorial jurisdiction when the arrest was made and, furthermore lacked probable cause for arresting him.
>
> Upon review of the record, the Bureau [DOT] has failed to meet its burden. When [Sgt.] Long first observed Defendant [Kruth], there was no indication that he was intoxicated just because he drove over the center line.
>
> Furthermore, Defendant [Kruth] was traveling at the speed limit the entire time [Sgt.] Long was pursuing him. In addition, he observed both stop signs during his pursuit.
>
> Finally, [Sgt.] Long arrested Defendant [Kruth] outside of his primary jurisdic-

tion in spite of the above. If Defendant [Kruth] had incurred a violation such as a broken taillight in [Sgt.] Long's jurisdiction, it would have been a violation in the Borough of Etna as well. However, the alleged violation in Shaler, crossing the center line, did not occur in Etna. (Citations omitted).

Trial Court Opinion, February 5, 2003, at 2–3; R.R. at 41a–42a.

DOT appealed. This Court, in an unpublished memorandum opinion, relying on the *McKinley III* decision, reversed and reinstated the suspension:

> Sgt. Long observed Kruth driving in Shaler Township in a suspicious manner. After Sgt. Long stopped Kruth in Etna Kruth smelled of alcohol and failed field sobriety tests. Under McKinley [III], even if Sgt. Long did not have probable cause to stop for a driving under the influence violation in Shaler Township and did not stop Kruth until he was in Etna, these circumstances are of no moment to the suspension of Kruth's operating license for violating Section 1547(b)(1) of the Code. DOT established that Kruth was stopped by a police officer who had reasonable grounds to believe that Kruth operated or was in actual physical control of the movement of the vehicle while under the influence. There was no dispute that DOT established the other three elements it must prove to suspend an operator's license for driving under the influence. Sgt. Long requested that Kruth submit to

---

**3.** In cases involving the suspension of a driver's license for a refusal to submit to chemical testing, DOT must prove: 1) that the licensee was placed under arrest for driving under the influence by a police officer who had reasonable grounds to believe that he was operating or was in actual physical control of the movement of a vehicle while under the influence of alcohol; 2) that he was requested to submit to

chemical testing; 3) that he was informed that a refusal to submit to such testing would result in a suspension of his operating privileges; and 4) that the licensee refused to submit to the test. *Banner v. Department of Transportation, Bureau of Driver Licensing,* 558 Pa. 439, 737 A.2d 1203 (1999).

**4.** The arrest occurred in Etna.

the chemical test and informed him that a refusal would result in the suspension of his operator's license. Kruth refused to take the test.

*Kruth v. Department of Transportation, Bureau of Driver Licensing,* No. 2783 C.D.2002 (Pa.Cmwlth. Filed July 9, 2003)(memorandum opinion).

Kruth appealed to the Pennsylvania Supreme Court which granted the petition for the allowance of appeal and remanded to this Court for consideration of *McKinley IV. Department of Transportation, Bureau of Driver Licensing v. Kruth,* 576 Pa. 643, 841 A.2d 120 (2004).

DOT maintains[5] that the outcome in *McKinley IV* does not control the outcome of Kruth's appeal. This Court agrees but the facts in the controversy at bar present an issue visited and answered by the exception carved out by our Supreme Court in *McKinley IV.* Here, DOT correctly asserts that Section 8953(a)(2) of the Judicial Code, 42 Pa.C.S. § 8953(a)(2), authorizes a *municipal police officer* to undertake an extraterritorial arrest. Section 8953(a)(2) of the Judicial Code, 42 Pa.C.S. § 8953(a)(2), provides in pertinent part:

(a) General rule.—*Any duly employed municipal police officer* who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases ... *(2) Where the officer is in hot pursuit of any person for any offense which was*

*committed,* or which he has probable cause to believe was committed, *within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person* after the commission of the offense. (Emphasis added).

This Court disagrees with the trial court's legal conclusions that the arrest was invalid and that Sgt Long lacked "probable cause." Sgt. Long, a municipal police officer, witnessed Kruth, on two occasions, drive on the wrong side of the road in Shaler, within territorial jurisdiction; first, Kruth made a left hand turn halfway into the lane opposing where Sgt. Long was sitting at a traffic light and where he ultimately swerved to avoid the police car. Second, Kruth crossed the center line for 150 yards while Sgt. Long followed him. Clearly, Sgt. Long had reasonable grounds to stop Kruth based upon the conduct observed in Shaler. Sgt. Long continued to follow Kruth from Shaler to Etna where he was arrested. Although he was caught briefly in traffic, this Court concludes that under the Code, Sgt. Long was in "fresh pursuit" of Kruth and, as a municipal officer, had the authority to arrest even though he crossed into Etna.

*McKinley IV* reinforced the reasoning of *McKinley III,* which this Court relies on to conduct its review, particularly concerning the geographic location where reasonable grounds were established for a police officer to make a stop. In *McKinley III,* this Court stated,

It is well-settled that license suspension proceedings are administrative, not criminal, in nature ... For purposes of enforcement of the Implied Consent Law, the fact that a police officer may

---

5. Our review is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law were committed, or whether the trial court

committed an abuse of discretion in making its determination. *Department of Transportation v. Renwick,* 543 Pa. 122, 669 A.2d 934 (1996).

develop reasonable grounds to believe that a driver is operating under the influence outside his or her territorial jurisdiction is not fatal ... In so holding, the Court does not alter the limited primary territorial jurisdiction of many police officers; the Court simply recognizes Implied Consent Law cases are different from criminal proceedings. (Citations omitted).

*McKinley III*, 793 A.2d at 1002.

■ Assuming arguendo that reasonable grounds to stop Kruth did not develop until after Kruth was in Etna, Sgt. Long's stop would still be valid.[6] In the context of the Implied Consent Law, there are three situations where a police officer may effectuate an arrest for driving under the influence. First, a police officer has undisputed authority to make an arrest in his or her own jurisdiction. Both municipal officers and limited jurisdiction police officers have this authority granted by statute. In this situation, an evaluation of whether the officer had reasonable grounds is necessary. Reasonable grounds exist when a reasonable person in the same position as the arresting officer could have concluded that the motorist was operating his vehicle while under the influence of alcohol. *Kuzneski*, 511 A.2d at 953.

Second, an officer may witness a crime in his or her jurisdiction and follow the perpetrator in hot pursuit. In this scenario, under *McKinley IV*, the police officer must possess an explicit grant of extraterritorial jurisdiction from the General Assembly to make an arrest. However, the development of reasonable grounds indicating the driver was under the influence need not be accomplished entirely in the officer's jurisdiction. *McKinley IV*, 838 A.2d at 704 (citing *McKinley III*, 793 A.2d at 1002); *see also, Evans* 342 A.2d at 445; and *Kuzneski*, 511 A.2d at 953.

Third, an officer may witness a crime outside his or her jurisdiction. In this case, a municipal police officer is granted authority to make an arrest under Sections § 8953(a)(5) and (a)(6) of the Judicial Code, 42 Pa.C.S. § 8953(a)(5) and § 8953(a)(6), as follows:

(5) When an officer is on official business and views an offense, or has probable cause to believe an offense was committed, and makes a reasonable effort to identify himself as a police officer, and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property

. . . . .

6. · In *McKinley IV*, the Supreme Court explicitly dismissed DOT's argument concerning when and where a police officer develops reasonable grounds to believe a driver is operating a motor vehicle under the influence for the purposes of the Implied Consent Law, and upheld the rationale in *Department of Transportation, Bureau of Traffic Safety v. Evans*, 20 Pa.Cmwlth. 403, 342 A.2d 443 (1975), and *Kuzneski*. The factual pattern in *Evans* is identical to this case. There, Officer Maniscola (Maniscola), a municipal police officer of Middletown Township, Bucks County, initially observed the suspect operation of a vehicle within township limits. The operator, James J. Evans (Evans), crossed over the township line. Maniscola pursued, stopped, and arrested Evans in Bristol Township. Initially, Evans was pulled over for a traffic violation but subsequently admitted to drinking alcohol. This Court concluded that, for a license suspension proceeding, factual determinations, not legal determinations, are crucial:

What is important is that factually Evans was admittedly placed under arrest, that he was charged with operating a motor vehicle while under the influence of intoxicating liquor, that he was requested to take the breathalyzer test and that he refused. Such being the case, there is no legal defense available to him.

*Evans*, 342 A.2d at 445.

(6) When an officer views an offense which is a felony, or has probable cause to believe a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

The authorizing statute of a limited jurisdiction police officer circumscribes his or her authority to act within certain defined areas. *McKinley IV*, 838 A.2d at 706 ("where the General Assembly has specified that individuals may act as police officers only at '[specified] buildings or installations,' we will not infer that it intended for such officials to be treated as police officers elsewhere."); *See Commonwealth v. Savage*, 403 Pa.Super. 446, 589 A.2d 696 (1991)("An opposite result in the present case would, in effect, grant a license to campus police officers to patrol the surrounding municipalities without invitation and in usurpation of the powers of municipal police. This we will not and cannot do, as such ruling would be in clear violation of [the campus police officers' enabling statute].")

*McKinley IV* addressed the factual scenario where a limited jurisdiction officer, Cpl. Miller, conducted a stop outside his territorial grant of authority. Here, Sgt. Long, a municipal police officer with reasonable grounds and legislatively granted statutory extraterritorial jurisdiction made a valid stop.[7]

Accordingly, this Court reverses the decision of the trial court.

Senior Judge Kelley concurs in the result only.

### ORDER

AND NOW, this 26th day of August, 2004, the Order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed.

---

7. Additionally, DOT contends that under Section 8953(a)(5) of the Judicial Code, 42 Pa. C.S. § 8953(a)(5), Sgt. Long also possessed extraterritorial authority to arrest Kruth for DUI. The Court need not address this argument based on the disposition of the first issue.