J-S67042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SANTOS LUIS RODRIGUEZ, | |
| Appellant | No. 1020 MDA 2015 |

Appeal from the Order Entered June 5, 2015
in the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0005754-2010

BEFORE: BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 13, 2016**

Appellant, Santos Luis Rodriguez, appeals from the order denying his counseled first petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546, after a hearing. Appellant claims that his girlfriend and one-time co-defendant, who pleaded guilty to the same charges with which he was charged, is now willing to testify on his behalf; he asserts this constitutes after-discovered evidence, warranting a new trial. He also alleges the ineffectiveness of trial counsel. We affirm on the basis of the PCRA court opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

In its opinion, the court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them at length here.

For context and convenience of reference, we note briefly that a jury convicted Appellant of aggravated assault, robbery, and criminal conspiracy.[1] Appellant's conviction arose out of the knife stabbing and robbery of the victim, Darnell Gonzalez.

There is no dispute that on the day in question, Gonzalez had consumed seven thirty-two ounce pitchers of Coors Light beer at a local bar and delicatessen.[2] Maria Rivera, Appellant's girlfriend, who had been sitting with him in the bar, approached Gonzalez and asked him for money. Gonzalez asked for sex. He testified that after some negotiation over price, lured by the proposition of sex with Rivera for money, he left the bar with her. In the alley behind the bar, Appellant stabbed Gonzalez from behind and demanded money. Gonzalez responded that he had none. Appellant and Rivera fled. Gonzalez managed to make his way home and call the police.

_____

[1] Appellant's conviction constituted a "second strike" offense, based on a prior conviction for manslaughter. (*See* N.T. Sentencing, 3/02/12, at 13). The court sentenced him to an aggregate term of not less than twenty-four nor more than sixty years' incarceration in a state correctional institution. This Court affirmed the judgment of sentence. (*See Commonwealth v. Rodriguez*, 64 A.3d 291 (Pa. Super. 2013) (unpublished memorandum)).

[2] He was later found to have a blood alcohol content (BAC) of .292%.

Appellant and Rivera were arrested several hours later, when an investigating police officer spotted them and noticed their resemblance to the people in the surveillance video from the bar, including their clothing and the backpacks they had with them. The police found a knife in one of the backpacks, which they identified as the weapon used in the crime.

It is undisputed that in his initial report to the police Gonzalez lied about his negotiation with Rivera over sex for money. He later claimed that, as an undocumented alien, he feared that if he told the police he had solicited a prostitute, he would be deported. In any event, the interaction between Appellant, Rivera and Gonzalez in the bar was captured on the bar's surveillance video, which was authenticated by the owner and played to the jury at trial.[3]

Pertinent to the claims in this appeal, at trial defense counsel argued to the jury that the knife found in the backpack was clean, and had no blood on it, "not even a speck of blood, nothing, no blood. No blood on the knife." (N.T. Trial, 1/04/12, at 85).

Also at trial, in final argument, the prosecutor alluded to the surveillance video, as showing that Appellant was acting in concert with Rivera. He argued further that Rivera was "working Mr. Gonzalez hard,"

---

[3] There was no audio to accompany the video.

while Gonzalez was "sort of minding his own business." (N.T. Trial, 1/05/12, at 339-40).

Noting that Rivera had already left the bar (and returned) several times, the prosecutor added, "[I]t looks like she's saying this is your last chance[.]" (*Id.* at 340).[4]  Appellant maintains on appeal that this comment was "complete speculation" and defense counsel was ineffective for not objecting to it.  (Appellant's Brief, at 23 (citing N.T. Trial, 1/05/12, at 340); *see also id.* at 340-41).

On November 16, 2011, Rivera entered a guilty plea to the same offenses charged against Appellant.  (**See** PCRA Court Opinion, 6/05/15, at 5).  After this Court affirmed his judgment of sentence, Appellant filed the instant PCRA petition.  The PCRA court appointed counsel, who filed an amended petition, which the court denied, after a hearing.  (**See** Opinion and Order, 6/05/15).  This timely appeal followed.[5]

Appellant raises four questions on appeal:

> A. Whether the [PCRA] court erred in denying [Appellant's] amended PCRA when the testimony of Maria de Los Angeles

---

[4] Appellant's quotation is incomplete.  The full sentence reads as follows: "There's even a time towards the end of that thing where she's at the bar with the door open and she's like basically almost as if — it looks like she's saying this is your last chance and he's sitting there." (N.T. Trial, 1/05/12, at 340).

[5] The PCRA court filed an order on June 17, 2015, referencing its opinion filed on June 5, 2015.  (**See** Order, 6/17/15); *see also* Pa.R.A.P. 1925(a). The court did not order a statement of errors.  **See** Pa.R.A.P. 1925(b).

Rivera constituted after discovered exculpatory evidence justifying the award of a new trial under 42 Pa.C.S.A. § 9543(a)(2)(vi)?

B. Whether the [PCRA] court erred in denying [Appellant's] amended PCRA [petition] when trial counsel was ineffective by failing to file a meritorious motion challenging the weight of the evidence?

C. Whether the [PCRA] court erred in denying [Appellant's] amended PCRA [petition] when trial counsel was ineffective by failing to argue to the jury that the knife which the Commonwealth claimed was the assault weapon did not have any blood on it?

D. Whether the [PCRA] court erred in denying [Appellant's] amended PCRA [petition] when trial counsel was ineffective by failing to object and move for a mistrial when the prosecutor made an improper argument which was speculative and contained his personal opinion concerning the credibility of the evidence presented?

(Appellant's Brief, at 4).

Our standard and scope of review for the denial of a PCRA petition is well-settled.

[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citations and internal quotation marks omitted).

To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.

2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

*Id.* at 303 n. 3.  Furthermore,

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.  42 Pa.C.S. § 9543(a)(2)(ii).  Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him.

*Id.* at 311–12 (most case citations, internal quotation marks and other punctuation omitted).  "Counsel's assistance is **deemed constitutionally effective** once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." *Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. 2008) (citations and internal quotation marks omitted) (emphasis in original).  Additionally,

> [Our Supreme] Court has recognized that counsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel.  Under some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do.

*Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 146 (2012) (case citations, internal quotation marks and other punctuation omitted).  This Court analyzes PCRA appeals "**in the light most favorable to the prevailing party at the PCRA level.**" *Rykard*, *supra* at 1183 (emphasis added); *see also Spotz*, *supra* at 311 ("The scope of review is limited to the findings of the PCRA court and the evidence of record, **viewed**

**in the light most favorable to the prevailing party at the trial level.**") (emphasis added).

Our Supreme Court has explained:

"As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error." *Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d 455, 472 (2004). This Court has addressed the difference as follows:

[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.' *Pierce*, 515 Pa. at 162, 527 A.2d at 977. . . . In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel. *Pierce*, *supra*.

*Gribble*, 580 Pa. at 676, 863 A.2d at 472 (emphasis in original). *Id.* at 315.

*Commonwealth v. Freeland*, 106 A.3d 768, 775-76 (Pa. Super. 2014).

Here, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court we conclude that there is no merit to the issues Appellant has raised on appeal. The PCRA court opinion properly disposes of the questions presented. (**See** PCRA Ct. Op., 6/05/15, at 4-10) (concluding that: (1) PCRA court properly denied petition based on proposed testimony from accomplice Rivera where Rivera had previously pleaded guilty to same charges she now proposed to deny; evidence is not newly discovered since Appellant would have known of Rivera's proposed testimony, because their consistent position had been that

- 7 -

they left the bar together but separately from Gonzalez; and Appellant failed to prove outcome would likely have been different, as Commonwealth could have cross-examined Rivera about her denial based on contradictory statements at her guilty plea proceedings; (2) Appellant failed to prove meritorious weight claim by preponderance of the evidence, and jury finding that victim's testimony was credible did not shock conscience of the court; defense counsel was not ineffective for declining to raise meritless claim; (3) claim that defense counsel was ineffective for failure to argue knife had no blood on it was contradicted by the record which confirms that defense counsel argued vigorously that knife had no blood on it; and (4) prosecutor's observation about surveillance video was permissible fair comment on evidence, and defense counsel had reasonable basis for declining to object). Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2016



IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA      :
     :
     :
v.      :      No. 5754-2010
     :
SANTOS LUIS RODRIGUEZ      :

## OPINION AND ORDER

BY: REINAKER, J.
June 5, 2015

     The Defendant, Santos Luiz Rodriguez, has filed an Amended Petition for Post-Conviction Relief. The Defendant argues that he is entitled to post conviction relief on four grounds: (1) the Defendant is entitled to relief based on newly discovered exculpatory evidence; (2) Trial Counsel was ineffective for failing to file a motion to challenge the weight of evidence; (3) Trial Counsel was ineffective for failing to argue to jury evidence regarding the weapon; and (4) Trial Counsel was ineffective for failing to object and move for mistrial when prosecutor made an improper argument. The Court finds that the Defendant's Amended Petition for Post-Conviction Relief will be Denied.

### Procedural and Factual Background

     On January 5, 2012 the Defendant was found guilty by a jury of one count of aggravated assault,[1] one count of robbery,[2] and one count of criminal conspiracy to commit robbery.[3] The Defendant was sentenced on March 2, 2012 and received consecutive sentences of eight (8) to twenty (20) years' incarceration for the aggravated assault conviction, six (6) to twenty (20)

---

[1] 18 Pa.C.S. § 2702(a)(1).
[2] 18 Pa.C.S. § 3701(a)(1)(i).
[3] 18 Pa.C.S. § 903(a)(1), 18 Pa.C.S. § 903(a)(2).

years' incarceration for the robbery conviction, and ten (10) to twenty (20) years' incarceration for the criminal conspiracy conviction. Therefore, the Defendant received an aggregate sentence of twenty-four (24) to sixty (60) years' incarceration.

On March 6, 2012 the Defendant filed a post-sentence motion to modify sentence which was denied. The Defendant then filed his Notice of Appeal on April 12, 2012. The Superior Court affirmed the judgment on January 31, 2013. The Defendant then filed his timely *pro se* motion for Post-Conviction Collateral Relief on December 23, 2013. The Defendant was appointed counsel and an amended petition was filed on July 24, 2014. The Court held an evidentiary hearing on February 18, 2015. At the conclusion of the hearing, the Court ordered both parties to file briefs. Both parties submitted their briefs and the matter is ready for decision.

On September 25, 2010, around 8:00 p.m., Darnell Gonzalez ("Gonzalez"), the victim, entered Lee's Deli, a local bar, on Columbia Ave in the City of Lancaster. (Notes of Trial Testimony, 1/4/12, (hereinafter "N.T.T.") at 134, 158-59, 162.) Gonzalez sat with a friend at the serving counter and drank seven, 32 ounce pitchers of Coor's Light. (*Id.* at 150, 162-163.) After his friend left the bar, Gonzalez moved to a rear room in the bar and continued to drink beer in a booth. (*Id.* at 163-164.) The Defendant, Santos Luiz Rodriguez, and his co-defendant, Maria Rivera, were seated in an adjacent booth with numerous backpacks on the floor. (*Id.* at 164, 176-77.) The Defendant and Rivera had entered the bar earlier in the afternoon and had previously known Gonzalez. (*Id.* at 136-137.) Rivera approached Gonzalez and spoke to him in Spanish, asking for Gonzalez to buy her a beer, which he then did. (*Id.* at 164, 166.) Rivera then asked him for money, but Gonzalez told her that she would have to do something in return for the money. (*Id.* at 168.) Rivera responded and offered sex with Gonzalez for the money. (*Id.* at 168.) Gonzalez told her that he only had $20, but Rivera insisted on getting $30. (*Id.* at 169.)

2

Meanwhile, the Defendant was seated at the adjacent table while Rivera and Gonzalez were talking. (*Id.* at 169.) While Rivera and Gonzalez were talking in Spanish, she would occasionally speak to the Defendant in English, and since Gonzalez is not fluent in English, he could not understand what the Defendant and Rivera were discussing. (*Id.* at 171.)

Rivera and Gonzalez agreed that Gonzalez would give Rivera money in exchange for sex, and after the agreement Rivera and the Defendant left the bar for a few moments. (*Id.* at 136-37, 172.) After they returned, Rivera and Gonzalez left the bar together to go to his apartment nearby. Gonzalez testified that he did not see the Defendant when he left the bar with Rivera. (*Id.* at 173.) Gonzalez and Rivera exited the bar through the back door and began to walk down the rear alleyway together. (*Id.* at 181.) While Gonzalez walked down the alley, he felt a burning pain in his left side and turned and saw the Defendant. The Defendant then demanded Gonzalez give him his money. (*Id.* at 191.) As Gonzalez backed away from the Defendant, he felt his side with his hand and saw blood. The Defendant continued to demand money from Gonzalez and he told him he didn't have any and Gonzalez proceeded to run home a few blocks away. (*Id.* at 191-194.)

Gonzalez then called the police and was taken to Lancaster General Hospital by ambulance and underwent exploratory surgery to determine the extent of his injuries. (*Id.* at 102.) Dr. Matthew Edavettel, a trauma surgeon at Lancaster General Hospital, performed the surgery and testified that the stab wound was near Gonzalez' colon, spleen, and kidney. (*Id.* at 97-100.) Dr. Edavettel determined that no major organs were damaged, but conducted an invasive exploration of his internal organs to rule out additional injury. (*Id.* at 103-04.) Dr. Edavettel testified that Gonzalez' blood alcohol level was 0.292%. (*Id.* at 105.)

3

Lancaster City Bureau of Police investigated the event and met with the owner of Lee's Deli to review surveillance videos recorded at the bar. (*Id.* at 236-37.) The Defendant and Rivera were observed on the videos and the police broadcasted their physical, clothing, and baggage descriptions. (*Id.* at 238.) Approximately four hours later, the Defendant and Rivera were found walking on Conestoga Street in Lancaster and were arrested and transported to the police station. (*Id.* at 240-241.) At the station, their bags were searched and the police located a knife. (*Id.* at 245-247.) The Defendant was subsequently charged with one count of aggravated assault, one count of robbery, and one count of criminal conspiracy to commit robbery.

## Discussion

In his motion, the Defendant raises four claims, the first claim involves after discovered evidence under 42 Pa. C.S.A. §9543(a)(2)(vi). The Defendant asserts that his co-defendant, Maria Rivera, was unavailable to provide testimony at the time of trial and her testimony would have changed the outcome of the trial if it was introduced. Under this claim, a defendant must prove:"(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." Commonwealth v. D'Amato, 856 A.2d 906, 823 (Pa. 2004).

The Defendant has now provided an Affidavit written by his co-defendant, Maria Rivera, as well as testimony. The Defendant was convicted of offenses that arose out of the alleged assault and robbery of Gonzalez. The Commonwealth argued that the Defendant and his co-defendant, Maria Rivera, agreed to rob Gonzalez. In Rivera's affidavit and testimony, she stated that she and the Defendant were not guilty of stabbing Gonzalez because they walked in a different direction from Gonzalez as they left Lee's Deli. The Defendant also asserts that his trial

4

counsel, Attorney Encarnacion, was aware of Rivera and did not call her as a witness since he was advised by her attorney that she was not going to testify. (Notes of testimony of PCRA ("hereinafter "N.T.PCRA") at 5.) The Defendant states that since Rivera is paroled from her state prison sentence, she is ready, willing, and able to testify to facts that are exculpatory for the Defendant and had a reasonable explanation as to why she was unable to testify at trial. The Defendant asserts that Rivera's testimony would likely result in a verdict of not guilty and since the victim's credibility was an issue and he provided inconsistent statements, Rivera's testimony would provide concrete evidence to contradict Gonzalez's incredible testimony.

However, the Defendant fails to explain how he was unaware of what his co-defendant would testify to. The Defendant asserts that his co-defendant would testify that he was not present at the stabbing because he walked in a different direction, but the Defendant would have known this information prior to trial since he was with his co-defendant. In addition, the Defendant cannot prove that Rivera's testimony would have likely resulted in a different verdict. Had Rivera testified, the Commonwealth would most likely have cross-examined Rivera on the fact that she had already entered a guilty plea to the same offenses that the Defendant was charged with on November 16, 2011. Rivera was not sentenced until January 4, 2012, which occurred as the Defendant's trial was proceeding. During her sentencing she admitted that she was standing next to the victim when the stabbing occurred. (Notes of Testimony of Sentencing Maria Rivera on 1/4/12, at 11.) Since Rivera's testimony contradicts her statements during her guilty plea and sentencing, the Defendant cannot prove that Rivera's testimony would likely compel a different verdict. Therefore, this claim is without merit.

5

The Defendant also raises three ineffectiveness claims. The following standards apply to the determination of ineffectiveness issues.

The law presumes that counsel was effective and the Defendant has the burden of proving ineffectiveness. Commonwealth v. Brooks, 839 A.2d 245, 248 (Pa. 2003). Therefore, to prevail on an ineffectiveness claim, the Defendant must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) counsel's performance caused him prejudice. Commonwealth v. Miller, 746 A.2d 592 (Pa. 2000). In addition, a defendant that claims ineffective assistance of counsel must identify the acts or omissions by counsel that cannot be considered the result of reasonable, professional judgment. A reasonable basis must be something more than a hunch-a blind guess on the part of counsel is tantamount to providing the defendant no counsel at all. Commonwealth v. Jones, 871 A.2d 1258 (2005).

In his first claim, the Defendant asserts that trial counsel was ineffective for failing to challenge the weight of the evidence through a post-verdict motion. Counsel cannot be considered to have provided ineffective assistance of counsel for failing to raise a claim on appeal that is meritless. Commonwealth v. Thuy, 623 A.2d 327 (Pa.Super. 1993). The Court can only grant a new trial on a claim that the verdict was against the weight of evidence "only where the verdict is so contrary to the evidence as to shock one's sense of justice." Commonwealth v. Davidson, 860 A.2d 575, 581 (Pa.Super. 2004). Here, the verdict was not so contrary to the evidence as to shock one's sense of justice.

The Defendant claims that the evidence presented was inherently contradictory and weak since the Commonwealth only established through video evidence that the Defendant was at or near the location of the victim when the victim and the Defendant were inside the bar in

6

question. However, the victim testified that the Defendant and Rivera were in the bar on the night in question, they were sitting together before Rivera came to talk to the victim, and the victim then went to sit with the Defendant and Rivera. (Notes of Trial Testimony (hereinafter "N.T.T.") at 164-66.) The Defendant and Rivera also left the bar for a short period of time and returned before the victim left with Rivera. (*Id.* at 172.) The Commonwealth corroborated this testimony by presenting a video from the bar which showed what occurred inside Lee's Deli. (*Id.* at 174-81.) The victim also testified that he saw the Defendant in the alley when he felt pain in his side and the Defendant then asked him for money. (*Id.* at 182, 191.)

The Defendant asserts that the victim's status as an undocumented alien and had a blood alcohol content of .292% did not make him a credible witness. However, the jury was unaware of the victim's immigration status and it has no relevance in the case because it was excluded from evidence. The jury had the opportunity to judge the credibility of the victim's testimony and it does not shock the judicial conscience that the jury found the victim's testimony credible. The Defendant also asserts that there was no blood found on the knife and the Commonwealth's theory that the Defendant possessed the knife used in the assault is invalid because there was no evidence linking the knife to the assault of the victim. The jury reaching a conclusion that the Defendant possessed the knife would not shock judicial conscience either. The Defendant was not arrested until four hours after the incident. (*Id.* at 240.) This would have given the Defendant ample time to clean the knife.

Therefore, since there were no meritorious claims in filing a post-verdict motion challenging the weight of the evidence, the Defendant's claim that he received ineffective assistance of counsel is meritless.

7

The Defendant's next claim asserts that trial counsel was ineffective for failing to argue to the jury that the knife that was claimed as the assault weapon did not have any blood on it. The Defendant states that the Commonwealth relied on eyewitness identification from the victim and corroborated his testimony only with video evidence and a knife taken from the Defendant when he was arrested and thought to be the assault weapon. (*Id.* at 341.) The Defendant believes that, since the knife did not have any blood on it, it is logical to assume that a knife used to stab someone in the abdomen would have some traces of blood on it. Since the Commonwealth did not introduce any evidence of blood on the knife, his trial counsel should have argued this fact to the jury as an indication of innocence. The Defendant believes that his trial counsel had no reasonable strategic basis for failing to argue the lack of blood, was ineffective for thinking that it was not significant, and the Defendant was prejudiced since the jury did not hear this argument and it could have changed the verdict. (N.T.PCRA. at 7-8.)

The Court finds this claim as meritless because trial counsel commented on the lack of blood on the knife in his opening statement. During his opening statement, counsel stated "the knife has his fingerprint. No blood. No blood, not even a speck of blood, nothing, no blood." (N.T.T. at 85.) Therefore, the jury was aware of the argument that there was no blood on the knife. In addition, trial counsel testified that he had reasonable strategic basis to focus on impeaching the main witness

> "...through various different statements that were made in the preliminary hearing, and the Court allowed [him] extensive use of his prior testimony at the preliminary hearing to do so. I mean, he was obviously stabbed, you know, that's—and he was bleeding. There was – we did make a deal out of the lack of blood and whether there was a trail of blood leading to where he was walking or not walking."

(N.T.PCRA. at 7.)

8

Therefore, the Defendant cannot prove that if trial counsel had mentioned the lack of blood again during closing statements that it would have rendered a different verdict and the issue is meritless.

Finally, the Defendant's last claim asserting ineffective assistance of counsel for failing to object and move for a mistrial after the prosecutor made an improper argument during closing argument is meritless. The Defendant claims that trial counsel should have objected after the prosecutor stated during closing argument:

> *"Remember, [Rivera] left the bar a couple of times. There's even a time towards the end of that thing where she's at the bar with the door open and she's like basically almost of if – it looks like she's saying this is your last chance and he's sitting here."*

(N.T.T. at 340.)

The Supreme Court of Pennsylvania has established that a "prosecutor is in a unique position as both an administrator of justice and an advocate. Accordingly, we have stressed that prosecutorial conduct in argument is a matter of special concern because of the possibility that the jury will give special weight to the prosecutor's arguments...." Commonwealth v. Dennis, 715 A.2d 404, 419 (Pa. 1998); see also Commonwealth v. Potter, 285 A.2d 492 (1971); Commonwealth v. Toney, 266 A.2d 732 (1970). However, the Court also noted that a prosecutor must have "reasonable latitude in presenting his case and must be free, as well, to make his arguments with "logical force and vigor...." Dennis, 715 A.2d at 419, quoting Commonwealth v. Cronin, 346 A.2d 59, 62 (1975). In addition, the Supreme Court of Pennsylvania has stated that when

> "considering a claim of prosecutorial misconduct, our inquiry 'is centered on whether the defendant was deprived of a fair trial, not deprived of a perfect trial.' Commonwealth v. LaCava, 666 A.2d 221, 231 (citing Commonwealth v. Holloway, 572 A.2d 687, 692 (1990). Thus, a prosecutor's remarks do not constitute reversible error unless their

9

unavoidable effect was to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that the jury could not weigh the evidence objectively and render a true verdict. Commonwealth v. Bond, 652 A.2d 308, 315 (1995). Further, the allegedly improper remarks must be viewed in light of the entire context of the closing argument as a whole. LaCava, 666 A.2d at 235."

Commonwealth v. Ligons, 971 A.2d 1125, 1157 (Pa. 2009).

Here, the prosecutor's comments were a reasonable comment and conclusion taken from the evidence presented at trial. The prosecutor was arguing what the co-defendant's body language and actions seemed to portray in the video evidence. However, Trial Counsel testified during the evidentiary hearing that he believes the statement is consistent with what the video shows and therefore, had no reason to believe the argument was inappropriate. (N.T.PCRA. at 9-10.) Therefore, trial counsel had a reasonable basis for not objecting to the statement since he also considered the objection to be meritless.

Finally, the Defendant did not suffer prejudice because the jury was not so wholly biased that they could not objectively weigh the evidence and render a true verdict because the Trial Court also properly instructed the jury. The Trial Court cautioned the jury in regard to the closing statements, that

> "Even though these arguments do not constitute evidence, you should consider them carefully. In their arguments, counsel will call to your attention the evidence which they consider material and will ask you to draw certain inferences from that evidence.
> Please keep in mind that you are not bound by their recollection of the evidence. It is your recollection of the evidence and your recollection alone which must guide your deliberations.
> If there is a discrepancy between counsel's recollection and your recollection, you are bound by your own recollection.
> Furthermore, you are not limited in your consideration of the evidence to that which is mentioned by counsel. You must consider all of the evidence which you consider material to the issues involved.
> To the extent that the inferences which counsel ask you to draw are supported by the evidence and appeal to your reason and judgment, you may consider them in your deliberations."

(N.T.T. at 319.)

Therefore, the jury is presumed to have followed these instructions and the Defendant's claim is meritless.

Accordingly, I enter the following:

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA          :
                                      :
                                      :
                                      :
          v.                          :          No. 5754-2010
                                      :
                                      :
                                      :
SANTOS LUIS RODRIGUEZ                 :

## ORDER

AND NOW, this 5th day of June, 2015 after a hearing on the Amended Petition for

Post-Conviction Collateral Relief filed December 23, 2013, it is hereby ordered that the petition

is DENIED.

BY THE COURT:

I certify this document to be filed
in the Lancaster County Office of
the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

ATTEST:

DENNIS E. REINAKER
PRESIDENT JUDGE
June 5, 2015

Copies to:

Vincent J. Quinn, Esquire
Amber Czerniakowski, Esquire

12