# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven T. Gillen, : 
  Appellant : 
 : No. 237 C.D. 2019
 v. : 
 : Submitted: February 26, 2021
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 


BEFORE: HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE J. ANDREW CROMPTON, Judge


## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED: December 29, 2021


Steven T. Gillen (Licensee) appeals from the entered February 21, 2019 order of the Court of Common Pleas of Fayette County (trial court) denying his statutory appeal from the one-year suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) under section 1547(b)(1) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1).[1] We reverse.

---

[1] Section 1547(b)(1) of the Vehicle Code, commonly referred to as the "Implied Consent Law," reads, in pertinent part, as follows:

> (1) If any person placed under arrest for a violation of section 3802 [ of the Vehicle Code, 75 Pa. C.S. §3802, governing driving under influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted

**(Footnote continued on next page…)**

## Factual and Procedural History

In the early morning hours of a wintery[2] January night, Pennsylvania State Police Trooper Matthew Costea was dispatched to a scene of an accident at 12:18 a.m. (Reproduced Record (R.R.) at 18a.) Upon arrival at the scene of the accident approximately 15 minutes later, Trooper Costea could not locate an operator of the vehicle. Trooper Costea checked the registration of the vehicle and discovered that it belonged to Licensee. *Id.* at 19a. At approximately 1:00 a.m., Shawn Gribbin (Gribbin) walked up to the scene. Gribbin told Trooper Costea that he observed Licensee in the driver's seat after the crash. Gribbin also told Trooper Costea that Licensee was "drinking and watching football prior to the crash." *Id.* at 22a. Gribbin stated that Licensee left the crash scene and went to Gribbin's condominium to sleep. *Id.* Gribbin gave Trooper Costea permission to enter his residence for the purpose of finding Licensee. *Id.* When Trooper Costea entered the residence around 1:30 a.m., he found Licensee asleep on the couch. *Id.* at 22a-23a.

When Trooper Costea roused Licensee, he detected the odor of alcohol, and observed that Licensee had bloodshot and glassy eyes and slurred speech. Trooper Costea also noticed a lump on Licensee's forehead. Trooper Costea attempted to ask Licensee questions, but Licensee's speech was slurred, and Trooper Costea could not understand many of his responses. *Id.* at 23a. When Trooper Costea asked Licensee

---

but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

    (i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. §1547(b)(1).

[2] Trooper Costea testified during cross-examination that the roads were snow-covered the night of the accident. *See* Reproduced Record (R.R.) at 30a.

2

whether the injury on his head came from the crash, Licensee responded that it "had to have come from that." *Id.* at 25a.

Licensee agreed to submit to a breath test, which indicated that his blood alcohol content (BAC) was 0.188%. *Id.* at 25a-26a. Trooper Costea conducted a horizontal gaze nystagmus test,[3] which led Trooper Costea to believe Licensee had a BAC over 0.08%—the legal limit of alcohol in Pennsylvania. Licensee was unable to stand and perform other field sobriety tests. *Id.* at 27a.

Trooper Costea informed Licensee that he was under arrest for driving under the influence of alcohol or a controlled substance (DUI) and read Licensee the warnings listed in DOT Form DL-26 (DL-26) (Pennsylvania's Implied Consent Law). *Id.* Licensee declined to sign the form or submit to a chemical blood test. *Id.* at 29a. As a result, DOT suspended Licensee's operating privilege for one year because he refused to submit to a chemical test of his blood. *Id.* at 9a.

Licensee filed a statutory appeal with the trial court. At the hearing, DOT had the burden of proving the following elements in support of its decision to suspend Licensee's driving privileges: (1) a police officer had ***reasonable grounds*** to believe that the licensee drove while under the influence of alcohol; (2) the officer asked the licensee to submit to chemical testing; (3) the licensee refused to submit to such testing; and (4) the officer provided a warning to the licensee that his failure to submit to testing would result in the suspension of his license. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203 (Pa. 1999).

_____

[3] "The horizontal gaze nystagmus test is a standard test used by police officers to determine whether a subject is intoxicated. The officer holds an object, such as a pen, in front of and slightly above the subject's eyes and then moves the object in front of the subject's face. The subject must follow the object with his eyes only. If the subject is alcohol-impaired, the eyeballs jerk and bounce as they follow the object. The greater the impairment, the greater the jerk or bounce." *Morris v. Department of Transportation., Bureau of Driver Licensing* (Pa. Cmwlth., No. 315 C.D. 2009, filed August 19, 2009) slip op. at 1 n.3.

DOT called one witness at the hearing, the investigating and arresting police officer, Trooper Costea. Licensee did not call any witnesses and did not testify. *Id.* at 15a. Trooper Costea explained that the dispatch was at 12:18 a.m., and his encounter with Licensee was at 1:30 a.m. He also recounted his conversation with Gribbin at the scene of the accident, during which Gribbin told him that Licensee was behind the wheel after the accident, and that Licensee was drinking before the accident. *Id.* at 17a. Licensee's counsel objected to this testimony on the grounds that anything Gribbin said to Trooper Costea that night was hearsay. *Id.* at 19a. The trial court overruled the objection and permitted Trooper Costea to testify as to Gribbin's out-of-court statements. *Id.* at 19a-21a.[4] Licensee's counsel also objected to introduction of the preliminary breath test conducted by Trooper that revealed Licensee had a 0.188% BAC on the grounds that the test was unreliable. *Id.* at 25a. The trial court overruled the objection and permitted the breath test results to be entered into evidence.

On cross-examination, Trooper Costea testified that he did not know what time the accident occurred, did not ask Licensee what time he drank or what he drank, and did not recall if there were open bottles of alcohol around the area where Licensee was sleeping. *Id*. at 38a.

Following the hearing, the trial court denied Licensee's appeal and upheld his license suspension. (Trial ct. op., 4/24/19, at 7.) The trial court first addressed Licensee's contention "that DOT failed to establish reasonable grounds which would lead one to believe that [Licensee] was in actual physical control of vehicle while in an intoxicated state at the time the vehicle was abandoned warranting a request for

---

[4] Gribbin was not present. It is not entirely clear why DOT did not subpoena Gribbin to appear at the hearing. However, from what we can glean from Licensee's counsel, it appears that Gribbin, at Licensee's *criminal* trial, recanted the statements he made to Trooper Costea. R.R. at 20a-21a.

4

submission to a chemical test." *Id.* at 4. Licensee argued that Trooper Costea did not see him operating his "vehicle and that DOT failed to establish a time frame between the accident and the arrest." *Id.* The trial court concluded that despite the 75 minutes which elapsed between the time Trooper Costea arrived at the accident scene and encountered Licensee, Trooper Costea had reasonable grounds to believe that Licensee was intoxicated while driving. *Id.* at 4-5. According to the trial court, the time period of less than 75 minutes between arrival at the scene of the accident and encountering Licensee was "sufficient to establish reasonable grounds to believe that [Licensee] was operating the accident vehicle while intoxicated." *Id.*

Next, the trial court addressed Licensee's hearsay argument concerning Gribbin's out-of-court statements. *Id.* at 5-6. The trial court, relying on *Menosky v. Commonwealth*, 550 A.2d 1372 (Pa. Cmwlth. 1988), reasoned that "the out[-]of[-]court statements [are permitted because the statements show] that reasonable grounds existed for [Trooper Costea] to believe that [Licensee] was in operation of the motor vehicle while under the influence of alcohol." (Trial ct. op., at 6.) Like *Menosky*, these statements were not hearsay, but rather, the statements were "admissible for purposes of proving the state of mind of the officer in response to hearing the statement." *Id.*

The third issue the trial court addressed was Licensee's argument that the pre-arrest breath test was not admissible because it was "unreliable," and it was not an approved device. *Id.* In determining that the breath test was properly admitted, the trial court reasoned that DOT's use of the test was to establish that Trooper Costea had reasonable grounds to believe Licensee had operated a vehicle while intoxicated. *Id.* at 6-7. "The purpose of [the breath test] testimony relates back to reasonable grounds and was not admitted as evidence of the blood alcohol content of [Licensee], but rather, was offered to show reasonable ground upon which Trooper Costea acted in forming

5

his belief that [Licensee] had operated the vehicle while intoxicated." (Trial ct. op., at 6-7.)

The fourth issue the trial court addressed concerned the admissibility of the results of the horizontal gaze nystagmus test. *Id.* at 7. Licensee had argued that the results of this test were not "scientifically reliable." R.R. at 26a. In holding the test results were admissible, the trial court stated that "[t]he evidence was admitted specifically for the purpose of establishing that [Licensee] was driving in an intoxicated state and not to show any culpability for [DUI]." (Trial ct. op. at 7.)

Lastly, the trial court addressed Licensee's claim that the license suspension was "illegal as an unconstitutional civil penalty imposed on an individual's exercise of the Fourth Amendment right to refuse consent to a warrantless search." (Trial ct. op., at 7.) Relying on *Boseman v. Department of Transportation, Bureau of Licensing,* 157 A.3d 10 (Pa. Cmwlth. 2017), the trial court concluded that it was "bound by precedent to reject this argument." *Id.*

On appeal,[5] Licensee raises five issues. They are: (1) whether Trooper Costea failed to establish reasonable grounds to request a chemical test because Trooper Costea could not establish Licensee operated the vehicle while under the influence of alcohol; (2) whether the trial court erred in permitting Trooper Costea to testify to the out-of-court statements between Gribbin and Trooper Costea; (3) whether the trial court erred in permitting testimony based upon the breath test Trooper Costea conducted the night of the accident—Licensee contends that DOT failed to establish the make and model of the test, and whether the breathalyzer was approved to be used; (4) whether the trial court erred in allowing Trooper Costea's testimony concerning

---

[5] "As an appellate court, our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Banner*, 737 A.2d at 1205.

6

conducting the horizontal gaze nystagmus test without proving whether the test is scientifically reliable; and (5) whether Pennsylvania's Implied Consent Law is unconstitutional. *See* Appellant's Br. 4; *see* Trial ct. op., at 3-4.

**Discussion**

In his first issue, Licensee argues that DOT failed to establish that Trooper Costea had reasonable grounds to believe that Licensee was driving his vehicle in an intoxicated state at the time it was abandoned. Licensee argues that DOT has no evidence as to when the vehicle was driven; it can only speculate. "All that is known is there was [a] dispatch made by the police at 12:18 a.m.[, and] Trooper Costea arrived at the residence at 1:30 a.m., an hour and 12 minutes after the dispatch." Appellant's Br. 19. Trooper Costea did not inquire what time Gribbin saw Licensee in the driver's seat of his vehicle, nor did Trooper Costea ask Licensee when he was drinking. Trooper Costea "also candidly admitted that he did not see the accident, he doesn't know of anyone who saw the accident, and he doesn't know the time the accident took place. Trooper Costea did little investigation. He never testified that he touched the hood of the vehicle and it was warm." Appellant's Br. 19 (citations and footnote omitted).

Additionally, Licensee cites and applies the following cases to his circumstances: *Sestric v. Department of Transportation, Bureau of Driver Licensing*, 29 A.3d 141 (Pa. Cmwlth. 2011), *Demarchis v. Department of Transportation, Bureau of Driver Licensing*, 999 A.2d 639 (Pa. Cmwlth. 2010)*, Stahr v. Department of Transportation, Bureau of Driver Licensing*, 969 A.2d 37 (Pa. Cmwlth. 2009), *Fierst v. Commonwealth*, 539 A.2d 1389 (Pa. Cmwlth. 1988), and *Department of Transportation, Bureau of Driver Licensing v. Mulholland*, 527 A.2d 1123 (Pa. Cmwlth. 1987). Appellant's Br. 12-19. Licensee argues that in *Mulholland* and *Fierst*,

7

this Court determined that observation of a motorist consuming alcohol after the time of an accident did not give rise to reasonable grounds to suspect DUI, in that such a conclusion required impermissible speculation. In *Mulholland*, the officer observed the licensee 25 minutes after the accident when he saw the licensee drinking and showing signs of intoxication, and in *Fierst*, the officer saw the motorist an hour after the accident. Therefore, reasonable grounds cannot be established on mere speculation that a licensee was intoxicated at the time of driving. Appellant's Br. 13-15.

Licensee further argues that *Stahr*, *Demarchis*, and *Sestric* all lend support to his case in that there must be a sufficient timeline established between the accident and observing Licensee's intoxication for an officer to have reasonable grounds that a person drove while intoxicated. Licensee argues that DOT provided no evidence as to when the Licensee drove the vehicle; DOT can only speculate. DOT only knows that there was an hour and 12 minutes between the dispatch and Trooper Costea's arrival at the residence at 1:30 a.m. Appellant's Br. 19. Thus, the only time established here is the time from dispatch to encountering Licensee, which is insufficient to demonstrate reasonable grounds that Licensee drove while intoxicated. The distinction made is the contrast in that in the other cases, the timeline is the time from the accident to encountering Licensee, and here, it is the time from the dispatch to encountering Licensee.

DOT responds by arguing that these cases are distinguishable. DOT argues that unlike *Mulholland* and *Fierst*, where police encountered the licensees drinking, there is no evidence Licensee was drinking after the accident. Appellee's Br. at 23. Then, as for *Stahr*, *Demarchis*, and *Sestric*, there was no timeline between when the licensees drove and when the officers encountered the intoxicated licensees. Appellee's Br. at 23.

8

The question of whether reasonable grounds existed is a question of law, which this Court reviews in a plenary fashion and on a case-by-case basis. *Department of Transportation, Bureau of Driver Licensing v. Malizio*, 618 A.2d 1091 (Pa. Cmwlth. 1992). This Court summarized the applicable test for determining whether a police officer had reasonable grounds in *Dreisbach*, as follows:

> Whether evidence is sufficient to constitute "reasonable grounds" can only be decided on a case-by-case basis. The test, however, is not very demanding. We note initially that, for "reasonable grounds" to exist, the police officer obviously need not be correct in his belief that the motorist had been driving while intoxicated. We are dealing here with the authority to request a person to submit to a chemical test and not with the admission into evidence of the result of such a test. The only valid inquiry on this issue at the de novo hearing is whether, viewing the facts and circumstances as they appeared at the time, a reasonable person in the position of the police officer could have concluded that the motorist was operating the vehicle under the influence of intoxicating liquor. Thus, it is not relevant that the motorist later, at the time of trial, can establish a cause other than intoxication for such observed behavior as slurred speech or an unsteady gait. At trial, the only relevant factual defense would be a showing that the motorist's behavior was not, in fact, as the officer testified.

*Dreisbach*, 363 A.2d 870, 872 (footnotes omitted).

An officer's belief that a licensee was operating a vehicle while under the influence of alcohol or a controlled substance must only be objective in light of the surrounding circumstances. *Zwibel v. Department of Transportation, Bureau of Driver Licensing*, 832 A.2d 599, 604 (Pa. Cmwlth. 2003).

As our Supreme Court stated in *Banner*, "the court must consider the totality of the circumstances, including the location of the vehicle, whether the engine

9

was running and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police." 737 A.2d at 1207. On several occasions, this Court has been asked to determine whether a police officer had reasonable grounds to suspect a DUI violation where the officer did not actually witness the licensee operating the vehicle.

In *Fierst*, witnesses at the scene of an accident location reported that the driver had left, and they gave police the license plate number of the licensee's automobile. Approximately one hour later, a police officer arrived at the licensee's house and saw him with a bottle of beer in his hand. The licensee staggered and smelled of alcohol. He was arrested for driving while intoxicated. This Court reversed the trial court's order and held "that under these facts and circumstances[,] a reasonable police officer could not conclude that there were reasonable grounds for believing that while driving, [the licensee] was under the influence of alcohol." *Fierst*, 539 A.2d at 1390.

In *Mulholland*, the licensee, a driver involved in an accident with another automobile, left the scene. Approximately 25 minutes later, accompanied by police, the driver of the other automobile found the licensee drinking at a tavern and identified him as the other driver. The police observed that the licensee appeared intoxicated and arrested him for driving under the influence. The licensee refused a breathalyzer test. This Court affirmed the trial court's order that sustained the licensee's appeal of his driver's license suspension. In doing so, this Court stated:

> This 25[-]minute delay seems to us to be too long for the officer to reasonably conclude that [the licensee] had in fact been driving his automobile under the influence of alcohol. As the trial court stated: "He could have gone in and had a couple of shots, even if he were in the accident. He could have gone in and had a couple of shots to calm himself down,

10

I don't know, but the point is we're left to speculate about it."

*Mulholland*, 527 A.2d at 1124 (citation omitted).

In *Stahr*, a Pennsylvania State Police trooper responded to an accident scene. With the vehicle abandoned, the trooper located the licensee at his home using vehicle registration information. When questioned by the trooper, the licensee admitted to driving the vehicle. At this point, the trooper noticed that the licensee smelled of alcohol, had slurred speech, and had an unsteady gait. The licensee admitted that he had been consuming alcohol that evening. The trooper placed the licensee under arrest and asked him to submit to chemical testing. The licensee refused. The trial court, following a hearing, concluded that the trooper had reasonable grounds to suspect the licensee had operated his vehicle while under the influence of alcohol. We reversed, noting the absence of any evidence in the record of a timeframe between the accident and the arrest or some other objective evidence to support the trooper's conclusion that the licensee had been under the influence at the time of the accident:

> At no time during his testimony did Officer Brown indicate any timeframe between the accident and the time he encountered Stahr. In other cases where the Court found a police officer had or did not have reasonable suspicion of DUI, where the arrestee was not found in his car, a timeframe between the arrestee's operation of the car and subsequent arrest, or some other evidence, such as witness accounts of the DUI, were established in the record.
>
> ***Officer Brown could not reasonably conclude that Stahr was driving under the influence simply because he showed signs of intoxication when he exited the state trooper's vehicle without further establishing the timeframe between the accident and the observed intoxication. No timeframe between the accident and arrest was established according to the evidence provided to the trial court***. We cannot, therefore, conclude that Officer Brown had reasonable

11

> suspicion that Stahr was in control of his vehicle while under the influence of alcohol. Since there was no objective evidence to support Officer Brown's suspicion that Stahr was driving under the influence, the order of the trial court is reversed, and Stahr's operating privileges are reinstated.

*Stahr*, 969 A.2d at 40-41 (citations omitted) (emphasis added). We concluded that there was no "objective evidence to support" the local officer's "suspicion that Stahr was driving under the influence . . . ." *Id.*

In *Demarchis*, DOT suspended Demarchis' operating privilege for his refusal to submit to a chemical test conducted by a police officer. *Demarchis*, 999 A.2d at 640. A police officer responded to a report from a dispatcher of "a possible DUI driver" driving a vehicle that had sparks coming from it. *Id.* at 641. The officer found a matching vehicle to the one described, but it was abandoned. *Id.* Then, upon learning the name and address of the vehicle's owner, the licensee, the officer went to the licensee's residence, where officers from another police department had already arrived. *Id.*

Upon arriving at the licensee's home, the officer "observed [the l]icensee and noted that he had bloodshot eyes, walked with a staggered gait, was unsteady, and slurred his words." *Id.* Also, the officer saw that the licensee "had a 'bracelet' around his wrist, indicating that he had been at [a] nightclub called Havana's, which is a drinking establishment." *Id.* The officer further testified that two other officers informed him that, upon asking the licensee who had been driving his car, the licensee said that a friend was driving his car, "but that he did not know his friend's name." *Id.* The officer did not have the licensee do a field sobriety test, but he asked the licensee to recite the alphabet to him and if the licensee was driving his vehicle, but he did not get an answer to the request or the question. *Id.* The officer then arrested the licensee

12

and read him the Implied Consent Form DL-26 and asked if he would agree to submit to a blood alcohol test. The licensee declined to do so. *Id.*

In determining that the police officer did not have reasonable grounds to conclude that the licensee was intoxicated while driving, this Court stated that it had "no objective evidence in the record to support [the officer's] suspicion that [the l]icensee had been operating or was in control of his vehicle at the time it was abandoned." *Id.* at 644. We reasoned as follows:

> we [face] the absence of any record evidence to establish a period between the time the vehicle had been abandoned and [the l]icensee's arrest. The lack of a time line is a troubling aspect of this case. There is simply no way to infer or estimate the length of time between the initial notice from the dispatch and arrest based solely on [the l]icensee's apparent attendance at some undetermined time at a nightclub, his alleged driving at an undetermined time, and his abandoning his vehicle at yet another undetermined time.

*Id.* We could not conclude that the officer had reasonable grounds to believe that the licensee was intoxicated while driving when there was no clear timeline of events.

In *Fierst* and *Mulholland*, we held that a police officer could not reasonably conclude that the drivers drove while intoxicated merely because they were observed consuming alcohol *after* the accident. In both cases, the police officer had no evidence that the driver had been under the influence *at the time of the accident*. In other words, the officers could not in those instances speculate as to whether the licensees had been operating their vehicles while intoxicated or whether they became intoxicated *after* their vehicles were abandoned. Here, unlike *Fierst* and *Mulholland*, Licensee was not found drinking and he was not at a bar. Nonetheless, following the accident, Trooper Costea observed Licensee displaying signs of intoxication, and the principles from *Fierst* and *Mulholland* are equally applicable here.

13

Where a licensee is not found at the accident scene, the arresting officer must establish "a timeframe between the [licensee's] operation of the car and subsequent arrest." *Demarchis*, 999 A.2d at 643 (quoting *Stahr*, 969 A.2d at 40) (emphasis omitted). Thus, even though no one observed Licensee drink after the accident, DOT was still required to establish a timeframe between the time of the accident, not simply the dispatch time, and the time of observed intoxication of the licensee.

In *McCallum v. Commonwealth*, 592 A.2d 820 (Pa. Cmwlth. 1991), the licensee had been involved in a vehicle accident and left the scene. Before leaving the scene, however, he reportedly admitted to two people who had witnessed the accident that he had been drinking. Based on these witnesses' testimony, the arresting officer met up with the licensee approximately 30 to 40 minutes after the accident and observed that the licensee had slurred speech, smelled of alcohol, and appeared glassy-eyed. This Court gave particular significance to the witness testimony that the licensee had admitted drinking that evening and the fact that there was no evidence which would provide any basis to conclude that the licensee's consumption of alcohol occurred after, and not before, the accident. *McCallum*, 592 A.2d at 822-23.

Here, the record supports a finding that Trooper Costea had reasonable grounds to believe (1) Licensee was under the influence of alcohol when he encountered him; (2) Licensee had been drinking earlier that evening; and (3) Licensee had at some point earlier that evening operated his vehicle, but this is the extent of the conclusions that can be reached from the evidence DOT presented during the hearing.

There is no evidence in the record to support Trooper Costea's suspicion that Licensee had been operating or was in control of his vehicle at the time of the accident because DOT failed to present evidence of a timeframe between the

Licensee's operation of the vehicle and subsequent arrest. Like *McCallum*, an eyewitness placed Licensee in the vehicle at the time of the crash. However, unlike *McCallum*, the witness did not say anything about the time the accident occurred. There is simply no record evidence to establish a period between the time the vehicle had been abandoned and Licensee's arrest. As we held in *Demarchis*, the lack of a timeline is a troubling aspect of this case and is dispositive. There is simply no way to infer or estimate the length of time between the Licensee's alleged driving and his arrest. The evidence indicates that 75 minutes elapsed from the time Trooper Costea was dispatched to the scene of the accident and Trooper Costea's interaction with Licensee. However, Trooper Costea did not establish the time of the accident. Without knowing this critical piece of information, Trooper Costea lacked the necessary information to form a reasonable belief that Licensee was driving while intoxicated. Moreover, there was no evidence, as in *Mulholland*, to establish one way or another that Licensee consumed alcohol either before or after the crash. In other words, we do not know what time Licensee was operating the vehicle, when he consumed alcohol, or what happened between the time of the crash and the time the breath test was administered. Therefore, it is as likely that Licensee consumed alcohol after he left the scene of the crash, and it is pure speculation that he drank before the crash. Given the tests were conducted over 75 minutes after Trooper Costea was dispatched to the scene of the accident, the tests fail to show anything besides the fact that Licensee was visibly impaired and under the influence of alcohol at the condominium.

Accordingly, under this Court's binding precedent, DOT's failure to establish a timeframe between Licensee's accident and arrest compels us to conclude that Trooper Costea did not have reasonable grounds to believe that Licensee violated section 3802 of the Vehicle Code.

15

Given our conclusion in this regard, it is unnecessary for this Court to consider Licensee's remaining issues. Additionally, given that Trooper Costea did not have reasonable grounds to believe Licensee violated section 3802, this Court declines to address the constitutionality of Pennsylvania's Implied Consent Law.[6]

Accordingly, the order of the trial court is reversed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[6] *See Commonwealth v. Williams*, 733 A.2d 593, 608 n.17 (Pa. 1999) (declining to address constitutional issues when the case can be disposed on a non-constitutional ground).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven T. Gillen,                          :
                    Appellant             :
                                          :    No.  237 C.D. 2019
        v.                                :
                                          :
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing                :

## *ORDER*

AND NOW, this 29th day of December, 2021, the February 21, 2019 order of the Court of Common Pleas of Fayette County is hereby reversed.

_____
PATRICIA A. McCULLOUGH, Judge